E. C. ERNST, INC., Petitioner,

v.

POTLATCH CORPORATION,
Respondent.

No. 78 CIV 4866 (LBS).

United States District Court,
S. D. New York.

Dec. 1, 1978.

Friedman & Gass, P.C., Arthur S. Friedman, New York City, Smith, Currie & Hancock, Glower W. Jones, Atlanta, Ga., of counsel, for petitioner.

Sacks, Montgomery, Pastore & Levine, David E. Montgomery and Stuart M. Levine, New York City, of counsel, for respondent.

## OPINION

SAND, District Judge.

In this case of first impression, the Court is called upon to decide, among other issues, a question raised but unanswered by the Seventh Circuit, i. e., whether . . . "[t]he Federal Arbitration Act denied federal courts the discretionary power to decline to exercise jurisdiction because of a pending state proceeding." *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.,* 565 F.2d 450, 454 n. 5. We conclude that this question should be answered in the negative. We also conclude that the action cannot be transferred to a more convenient forum because of the language of the Act as construed by the controlling precedents and without regard to the equities of this controversy.

These issues arise as follows:

E. C. Ernst, Inc. ("Ernst") has petitioned this Court for an order, pursuant to 9 U.S.C. § 4, directing arbitration in the manner provided in an agreement between Ernst and Potlatch Corporation ("Potlatch"). In response, Potlatch has moved for an order transferring this petition to the United States District Court for the Eastern District of Arkansas or dismissing or staying this petition pending the determination of the Arkansas state court proceeding.[1] By cross-motion filed November 3, 1978, Ernst moves for a summary determination of its entitlement to an order directing arbitration.[2]

Ernst's motion was originally heard on November 2, 1978. At that time, the par-

---

1. Potlatch also urges this Court to dismiss the petition for 3 procedural reasons: (1) the petition is fatally defective because it does not allege the failure, neglect or refusal by Potlatch to arbitrate as required by the Act; (2) there is no subject matter jurisdiction because the petition fails to state the principal places of business of the parties; and (3) the petition is defective because it contains a request for pre-arbitration discovery and court supervision of the arbitration. We find no merit in any of these arguments.

First, we find that the failure to allege a refusal to arbitrate can be corrected by amendment. We believe that Potlatch's action in bringing a third-party complaint against Ernst, alleging, among other things, the claims which Ernst raises in this arbitration petition, could have been fairly interpreted by Ernst as an indication that Potlatch had no intention of pursuing arbitration. Moreover, we find Potlatch's position that it has not refused to arbitrate to date inconsistent with its objection to arbitration filed with the American Arbitration Association and its move to stay arbitration filed in the Arkansas proceeding. Finally, the mere existence of a dispute over whether there has been a failure, neglect or refusal to arbitrate does not justify dismissal at this stage of the litigation. Section 4 of the Arbitration Act provides that such disputes should be tried.

Similarly, we find that the petition may also be amended to state the principal places of business of Ernst and Potlatch. According to the affidavits submitted, there is diversity: Ernst's principal places of business is Washington, D.C. and Potlatch's principal place of business is California.

Finally, we do not find that the inclusion of a discovery request in the petition merits the drastic action of dismissal of a portion of the petition. Although we agree with Potlatch that courts have generally denied discovery on the subject matter of a dispute to be arbitrated, the law in this circuit is that it may be ordered in exceptional circumstances. *Bergen Shipping Co. v. Japan Marine Service, Ltd.,* 386 F.Supp. 430 (S.D.N.Y.1974); *Bigge Crane and Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240 (E.D.N.Y. 1973). At this early stage of the proceedings, we cannot determine whether petitioner will make a showing of extraordinary circumstances to merit discovery.

2. At oral argument, the Court directed that this motion be adjourned pending the decision in the instant action.

ties stressed the importance of a prompt resolution of their motions in light of the pending Arkansas state court action. Accordingly, this Court issued an oral opinion the following day, denying the motion to transfer. Decision on all other motions was reserved, pending the submission of additional briefs by the parties.[3]

Having reviewed the requested briefs, this Court restates its reasons for denying the motion to transfer and grants Potlatch's motion for a stay.

## FACTS

This dispute arises out of a 1976 agreement between Ernst, a District of Columbia corporation engaged in the business of electrical contracting, and Potlatch, a Delaware corporation engaged in the business of manufacturing paper products. Under the terms of the construction agreement, Ernst agreed to make certain electrical installations in a paper mill being constructed by Potlatch at McGehee, Arkansas, for a contract price of $5,163,188.

Besides Ernst, Potlatch employed a number of contractors in connection with the project and many of these contractors employed subcontractors. In May, 1978, one of the subcontractors sued its prime contractor and Potlatch in the Chancery Court in Desha County, Arkansas, to enforce a mechanics lien against the project in the amount of $43,559.12. In response, the parties asserted cross-claims and counterclaims.

In July, 1978, Potlatch impleaded Ernst in the Arkansas action seeking indemnity from Ernst for any amount for which it might be liable to the subcontractor or the prime contractor. Specifically, Potlatch sought damages totalling $26,514.31. The third-party complaint, however, also indicated that the *ad damnum* clause might be increased at a later date: "In addition, Potlatch has sustained and is sustaining other damages due to the above described conduct of Ernst, and Potlatch reserves the right to amend this third-party complaint at a later date to include a prayer for such damages from Ernst." [4]

Before filing a response to this third-party complaint, Ernst served a demand for arbitration on Potlatch with the American Arbitration Association.[5] Following this demand, Ernst demurred to the Arkansas complaint alleging that the Arkansas court lacked jurisdiction of the subject of the action because the claim is controlled by a binding arbitration agreement. On October 16, 1978, three days after filing its demurrer, Ernst filed the instant petition in this Court for an order directing arbitration.

Potlatch responded in several ways to Ernst's demurrer and demand for arbitration. On October 28, 1978, Potlatch filed its detailed response to the demurrer of Ernst, alleging, among other things, that the contract provision upon which Ernst based its arbitration demand did not cover the type of disputes alleged and that Ernst had waived any right it may have had to demand arbitration by failing to make a timely demand as required by contract.

At the same time that it responded to the demurrer, Potlatch filed with the American Arbitration Association a "Special Appearance for Objection to Arbitration Proceedings" and moved in the Arkansas state action for a stay of arbitration.

The Arkansas court overruled Ernst's demurrer on October 31, 1978. Ernst was directed to respond to the third party com-

---

3. In these briefs, the Court requested that the parties address the issue whether the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) permits a federal court to dismiss or stay an arbitration petition brought under 9 U.S.C. § 4 when there is a pending state court action.

4. In fact, Potlatch amended its complaint on October 23, 1978 to seek recovery of six million dollars in damages from Ernst on the basis of material breaches of the contract.

5. In support of this demand, Ernst cited § 19 of the contract which provides in pertinent part:
   "(a) All disputes, claims or questions subject to arbitration under this Agreement shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Construction Industry Arbitration Rules of the American Arbitration Association . . . .".

plaint by November 20, 1978. The Arkansas court also directed that a hearing on Potlatch's motion to stay arbitration be held after November 20, 1978.

## I

## FORUM NON CONVENIENS

Potlatch urges that this action should be transferred to the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a). This section provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In support of this motion, Potlatch argues that New York is an inconvenient forum because the dispute arose out of a construction project in McGehee, Arkansas; Ernst's work was performed in Arkansas; the agreement provides that it is to be governed by Arkansas law; the necessary witnesses primarily reside in Arkansas or nearby states; and the voluminous records for the project are located in Arkansas. Moreover, as is pointed out in the affidavits of J. T. Gressette and S. M. Rollinson submitted in support of this motion, part of the Ernst claim requires an understanding of the soil and weather conditions in the McGehee area. The witnesses who have the relevant knowledge of the soil and weather conditions of the project area reside in Arkansas. Finally, Potlatch stresses that the sole connection with New York is that both Potlatch and Ernst are qualified to do business in New York.

■ We agree with Potlatch that the equities favor a transfer of this action to the Eastern District of Arkansas; we conclude, nevertheless, that we are without power to transfer this case to Arkansas. In *Aaacon Auto Transport, Inc. v. Ninfo*, 490 F.2d 83 (2d Cir. 1974), the Second Circuit held that the Federal Arbitration Act mandates that a district court faced with an arbitration petition proceed summarily to the merits and is without power to transfer the case pursuant to 28 U.S.C. § 1404(a).

At oral argument, Potlatch attempted to distinguish this case on several grounds. First, it argued that in *Aaacon* the contracts provided for arbitration in New York, the same place where the petition was originally filed. Thus, in *Aaacon* if the court had transferred the action to another district, the arbitration would not have been held in New York. Under *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391 (3d Cir. 1974), arbitration must take place within the district of the court compelling arbitration regardless of the designation of locale in the contract. According to Potlatch, transfer of the instant action would not create the anomalous situation which would have been created by a transfer in *Aaacon*. Rather than achieving a result which the parties did not bargain for, Potlatch contends that transfer here would achieve the contract objective: arbitration in Arkansas.[6]

Besides distinguishing *Aaacon* on its facts, Potlatch also argues that § 4 need not be read as narrowly as the Second Circuit apparently read it. Although the section provides that the "hearing and proceedings . . . shall be within the district in which the petition . . . is filed", Potlatch urges that "is filed" should be construed to mean the district in which the petition is *currently* pending. Under its interpretation, a petition could be filed in different courts at various stages in the same litigation. Thus, the language of the statute is not limited to the district where the petition was originally filed.

Finally, Potlatch resorts to a contention related to the legislative history of the Act. According to its reading of the 1925 legislative history of § 4, Congress evidenced a concern that arbitration proceed in a convenient forum. In support of this interpreta-

---

**6.** Potlatch admits that arbitration in Arkansas is not a requirement under the contract. However, it argues that under the American Arbitration Association's standards, "there is substantial likelihood that the arbitration would be directed to proceed in Arkansas, the situs of construction." Respondent's Brief at 15.

tion of the sketchy legislative history,[7] Potlatch quotes the portion of the Senate debates where Senator Caraway, who was not a member of the Committee on the Judiciary which had proposed the arbitration bill, asked whether the amendment [8] "touching the question as to where the arbitration shall take place" was still in the bill "[s]o it was not possible to drag a man across the country to arbitrate." [9] Except for the comment on the Senate floor, the legislative history is silent as to the precise reason Congress adopted the amendment relied on by the Second Circuit in *Aaacon*. Potlatch, however, assumes that Congress tied the place of arbitration to the district court in which the petition was filed to ensure that "a man could not be dragged across the country to arbitrate." Moreover, Potlatch argues that this amendment, although not efficacious in 1978, achieved its intended purpose in 1925. Because the venue provisions at that time provided that a corporation resided for diversity purposes only in its state of incorporation, this limitation guaranteed that the district in which arbitration could be compelled would be the state of incorporation of at least one party.

As we indicated at oral argument, we do not find these arguments persuasive. As to the argument which attempts factually to distinguish *Aaacon*, we note that the Second Circuit used broad language in holding that the transfer was beyond the power of the court:

"Since the agreement on its face provides for arbitration in New York and since the petition was filed in the Southern District of New York, the statute mandates that the court below proceed summarily to a trial of the issues as to the making of the agreement. *Aaacon Auto Transport, Inc. v. Teafatiller*, 334 F.Supp. 1042, 1044 (S.D.N.Y.1971); *Lawn v. Franklin*, 328 F.Supp. 791, 793 (S.D.N.Y.1971). It follows that the court below, *lacked the power* to order the transfer of the case to Wisconsin. See *Farrell v. Wyatt*, 408 F.2d 662, 663–65 (2d Cir. 1969)". 490 F.2d at 84. (emphasis added).

Although Potlatch makes much of the fact that the *Aaacon* contract provided for arbitration in New York, this difference is not dispositive. We note that in *Aaacon* the Second Circuit dealt with the question in terms of the "power" of the District Court; we read this to refer to a limitation imposed by the terms of the statute, not the designation made by the parties.

▮ Similarly, we find the argument based on statutory construction strained for two reasons. First, we note that had Congress meant to include any district court in which the action was pending, it would have said so. For example, § 3 of the Arbitration Act speaks in terms of the "court in which such suit is pending." [10]

7. The entire legislative history of the passage of the Federal Arbitration Act in 1925 consists of scattered sentences in the Congressional Record and two brief committee reports by the House and Senate Committees on the Judiciary.

8. The Federal Arbitration Act was adopted by the 68th Congress in February, 1925. When originally introduced in the House and Senate, the bills which eventually became the Act (H.R. 646 and S. 1005) did not include the § 4 proviso that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 65 Cong.Rec. 11081; 66 Cong.Rec. 2759 (1925). This amendment was added when the bill was reported out of committee. In describing the effects of this amendment, the Senate Committee on the Judiciary indicated that a party seeking to compel arbi-

tration would be required to apply to the proper district court. S.Rep.No.536, 68th Cong., 1st Sess. 3 (1924).

9. 66 Cong.Rec. 2761 (1925).

10. This section reads in full:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Moreover, transfer of an action pursuant to § 1404(a) does not erase what has already been done in the transferor court. Rather, the case is considered transferred for trial purposes only. In all other respects, it remains a case of the court of original venue. For example, the statute of limitations runs from the date of the filing of the action originally and not from the date of transfer of the papers by the clerk of the court to the transferee court. See *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); see generally C. Wright & A. Miller, *Federal Practice and Procedure* § 3846. Applying these principles to the language of the Arbitration Act, we conclude that the term "filed" as used in § 4 refers to the initial filing by the petitioner and not to the docketing of the papers in the transferee court.

■ Finally, although we agree with Potlatch that the legislative history of § 4 apparently evidences an intent not to "drag a man across the country to arbitrate", we do not find this statement determinative. We note that the language of § 4 is clear and in such instances resort to legislative history is improper. *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Aviation Consumer Action Project v. Washburn*, 175 U.S.App.D.C. 273, 535 F.2d 101 (1976). Moreover, although Potlatch contends that the intention of Congress that arbitration take place in a convenient forum was frustrated by the corporate venue provisions enacted since 1925, we conclude that these statutory changes did not have such drastic effect. This section never guaranteed that arbitration would be compelled in a convenient locale. As the law read in 1925,[11] it was possible for a contract to provide for arbitration in Kansas, for example, and for a New York corporation to sue to compel arbitration in New York against a California corporation.

Finally, this section has been amended twice since the expansion of the corporate venue provision. At neither time did Congress propose changing the language of § 4.[12]

As we have noted, were it not for the compulsion of the statute as interpreted by *Aaacon,* we would grant the motion for a change of venue. However, the *Aaacon* precedent and the clear language of § 4 preclude consideration of the equities and the order of transfer.

## II

## DISMISSAL OR STAY

Alternatively, Potlatch argues that this action should be dismissed or stayed during the pendency of the Arkansas state court action.

Citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Will v. Calvert Fire Insurance Co.,* 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), Potlatch contends that a federal court has the power to dismiss or stay a federal action pending the determination of a state court action. In *Colorado River,* the Supreme Court recognized that there are circumstances which would justify a federal court declining to exercise jurisdiction while a state suit is pending. In determining whether a parallel action in the state court is grounds for declining to exercise properly invoked federal jurisdiction, the Supreme Court stated: "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." 424 U.S. 818, 819, 96 S.Ct. 1247.

**11.** In *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), the Supreme Court announced the rule that a corporation may be sued in diversity actions not only in its state of incorporation but in each state where it is doing business and has designated an agent for process. This principle was codified in 28 U.S.C. § 1391(c) which was enacted in 1948.

**12.** In 1947, Congress codified this section. The amendments in 1954 are not relevant to this issue.

■ The Court indicated several factors which might justify a dismissal or stay: (1) the assumption of jurisdiction over a res by the state court; (2) the desirability of avoiding piecemeal litigation; (3) the inconvenience of the federal forum, and (4) the order of initiation of the two actions.

■ We find that there are present here in the instant action all but the first of the enumerated factors. We find that all considerations of convenience, judicial economy and comity militate in favor of such a stay. The Arkansas court has before it several claims which arise out of the same facts and issues which are the subject of Ernst's claim against Potlatch in this action, i. e., the claim of two other contractors against Potlatch and Potlatch's claim-over against Ernst, as well as the underlying claim by Potlatch against Ernst for faulty performance and Ernst's contention that this matter is subject to arbitration. Thus, even if this Court were to proceed with the motion to compel arbitration, the Arkansas action would still be required.

We note that the Arkansas action was commenced before the federal action was filed. The Arkansas action against Potlatch was commenced on May 25, 1978 and the third-party complaint against Ernst was filed on July 2, 1978, whereas the federal action was not filed until October 16, 1978. While this Court recognizes Ernst's contention that the operative date for purposes of determining the sequence of the actions should be the date of the amendment of the cross-claim to increase the damages from approximately $26,000. to $6,000,000. (October 23, 1978), we find that the language of the original complaint cited on page 696, *supra*, sufficiently alerted Ernst to the possibility that the complaint might be amended to include substantial damages at a later date.

Moreover, the Arkansas court has already overruled Ernst's demurrer to the complaint on the ground that the claim is subject to arbitration.[13] The Arkansas court has also directed that a hearing be held after November 20, 1978 (the date on which Ernst's answer to the third party complaint is due) on Potlatch's motion to stay arbitration.

The question on the merits, i. e., whether the arbitration provision applies to the present dispute between Potlatch and Ernst, is, of course, a question of contract interpretation. The contract provides that it is to be governed by the law of the place of the work, i. e., the law of Arkansas.

Although we recognize that most of the exceptional circumstances outlined by the Supreme Court in *Colorado River* are present here, this conclusion does not end our inquiry. As we indicated at oral argument, this Court is concerned that the Arbitration Act constitutes an exception to the principles of *Colorado River* for those cases brought under § 4, i. e., that the Act creates a compulsion on the part of a federal court to exercise its jurisdiction. As we noted at the outset of this opinion, this issue was raised, but not decided, in *Bio-Analytical Services v. Edgewater Hospital*, 565 F.2d 450, 454 n.5 (7th Cir. 1977), the only case we have found which discusses the problem.

We conclude that the Arbitration Act does not mandate that a court ignore the principles of *Colorado River*. As Potlatch points out in its supplemental brief, there is nothing in the Arbitration Act which prohibits a federal court from dismissing or staying an action under § 9 to confirm an arbitrator's award. This principle was recognized by the Second Circuit in *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, in which it stated that "it is within the discretionary power of the district court to stay its proceedings [to confirm an arbitrator's award under the Arbitration Act] pending the completion of state proceedings." 302 F.2d at 19. See also *Paley Associates, Inc. v. Universal Woolens, Inc.*, 446 F.Supp. 212 (S.D.N.Y.1978); *Local 501 v.*

13. Ernst argues that Potlatch attaches too much importance to the overruling of its demurrer by the Arkansas state court. Rather than establishing that Ernst's claim was not arbitrable, it merely indicated that the allegations were sufficient to state a cause of action. Petitioner's Brief at 13.

*Barmon Bros. Co.,* 418 F.Supp. 267 (S.D.N. Y.1976); *Cocotos Steamship of Panama v. Hugo Neu Corp.,* 178 F.Supp. 491 (S.D.N.Y. 1959). Moreover, the Court of Appeals has held that a district court has the power to stay proceedings brought under 29 U.S.C. § 301 to compel arbitration if there is a prior action involving the same dispute in state court. *Milk Drivers & Dairy Employees v. Dairymen's League Co-Operative Association,* 304 F.2d 913 (2d Cir. 1962).

We found, however, no cases brought under § 4 of the Arbitration Act where the district court stayed or dismissed a petition pending state court determination. Thus, although we conclude that a stay or dismissal would not violate the express federal policy underlying the Arbitration Act, we are still faced with the question whether the specific language of § 4 prohibits a court from staying or dismissing a petition to compel arbitration.

Such an argument could be predicated on that sentence in § 4 which directs that "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed *summarily* to the trial." [emphasis added]. Although one could argue that this proviso requires a prompt resolution of the question by the federal court, we conclude that this section indicates the priority a district court must accord a petition once it has assumed jurisdiction. It does not govern, however, those instances where a court, in the exercise of its discretion, stays or dismisses an action and never reaches the merits of whether the dispute is arbitrable.

We reach this result for several reasons. First, as mentioned above, this Circuit has permitted stays or dismissals of petitions to confirm arbitration awards under § 9 and has stayed an action to compel arbitration under § 301 of the Labor Management Relations Act. There appears to be no valid policy reason why a different result should issue merely because the petition was brought under § 4. Nothing in the admittedly sketchy legislative history of this section supports such a dichotomy. Second, a stay is particularly appropriate in this ac-

tion where the only nexus with the district is that the corporations are licensed to do business here. Because we are constrained by the mandate of *Aaacon* not to transfer this action, we are presented with the same perplexing dilemma which the court found in *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.,* 499 F.2d 1391 (3rd Cir. 1974): we cannot order arbitration strictly in accordance with the terms of the contract without contravening the language of § 4 that arbitration be within the district in which the petition for an order directing such arbitration is filed. This result can be avoided by having the Arkansas state court decide Potlatch's motion to stay arbitration. If this motion is denied, the American Arbitration Association will determine the situs of the arbitration under its rules, which is the method provided for in the agreement.

Although we realize that under *Colorado River*, we have discretion to either dismiss or stay this action, this Court finds that a stay rather than a dismissal is appropriate here in order to ensure a just disposition of this litigation should anything prevent a prompt state court determination. Thus, if Potlatch does not proceed diligently with its motion to stay arbitration before the Arkansas court, Ernst may move for a vacation of the stay.

Accordingly, Potlatch's motion to stay this action pending determination of the motion to stay arbitration pending in the Arkansas state court proceeding is granted. In all other respects, Potlatch's motion is denied.

SO ORDERED.