**WESTCHESTER RESCO CO., L.P., Appellee,**

v.

**NEW ENGLAND REINSURANCE CORP., Appellant.**

No. 892, Docket 86–9036.

United States Court of Appeals, Second Circuit.

Argued March 3, 1987.

Decided May 1, 1987.

Peter W. Birkett, Mendes & Mount, New York City, for appellant.

Robert L. King, Stuart M. Sarnoff, Michael W. Galligan, Debevoise & Plimpton, New York City, for appellee.

Before OAKES and WINTER, Circuit Judges, and ZAMPANO, District Judge.*

PER CURIAM:

New England Reinsurance Corporation ("New England") appeals from so much of a judgment and order of the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, as granted the motion by Westchester Resco Company, L.P. ("Resco"), for partial summary judgment. We affirm substantially on the basis of Judge Sweet's opinion, 648 F.Supp. 842 (S.D.N.Y.1986), and write only to address the question whether New England validly cancelled Resco's completed operations insurance coverage.

Resco purchased umbrella insurance coverage from New England for the period during which it was constructing a solid waste disposal facility in New York State, and sought more limited "completed operations coverage" for a period of three years after construction was completed. Though the policy as endorsed in fact stated that completed operations coverage would extend only from the date of completion, December 15, 1984, until April 5, 1987, for the reasons given by the district court, 648 F.Supp. at 845–48, we hold that the district court properly reformed the contract to provide for a three-year completed operations extension, running from December 15, 1984, to December 15, 1987.

In May 1986, New England purported to cancel Resco's policy, effective June 9, 1986, pursuant to Condition N of the policy, which provided that

---

* Of the District of Connecticut, sitting by designa- tion.

This policy may be canceled by [New England] by mailing to [Resco] ... written notice stating when ... such cancellation shall be effective.... [T]he effective date of cancellation stated in the notice shall become the end of the policy period.

The effort to construe this provision in order to gauge the effectiveness of New England's cancellation of the policy is hampered, as Judge Sweet remarked, by the fact that the parties have provided here "an object lesson in how not to make a contract," 648 F.Supp. at 843. Indeed, determining the terms of the contract requires an examination of rounds of telegrams, binders, policy terms, and letters, not just between insurer and insured but also among their respective brokers.

The district court, in holding the cancellation ineffective, noted that the effect of a cancellation notice under Condition N was to accelerate the end of the policy period, and that the typed-in definition of "policy period" in Item 2 of this standard form policy was April 5, 1982, until April 5, 1985. The court reasoned that Condition N permitted cancellation during, but not after the end of, the defined policy period, since after April 5, 1985, a cancellation notice could not operate to accelerate the end of the policy period. We note, however, that other provisions of the policy use the term "policy period" in a context making it clear that reference is being made to the entire period during which coverage is in effect, not simply to the policy period as defined in Item 2. Insuring Agreement Paragraph I, for example, provides for coverage for liability caused by an "occurrence." An "occurrence" is defined in Definition Paragraph H as an accident or event that results in injury or damage "during the policy period." Various forms of covered injury and damage are also stated to be those occurring "during the policy period." If the coverage thus provided for existed only during the policy period, and the policy period ended on April 5, 1985, as stated in Item 2, then it is difficult to see what would be the content of the completed operations coverage after April 5, 1985. Obviously, then, in the definitions of covered events the term "policy period" was used to refer to the entire period during which coverage was to be in effect.

It follows that the term "policy period" is used inconsistently in the insurance contract here at issue, and that the term as used in Condition N is ambiguous as between the two meanings discussed above. Where an ambiguity exists in a standard-form contract supplied by one of the parties, the well-established *contra proferentem* principle requires that the ambiguity be construed against that party. *See Restatement (Second) of Contracts* § 206 & comment a (1981). In particular, New York law, which the parties agree governs here, recognizes a general rule that ambiguities in an insurance policy are to be construed strictly against the insurer. *See Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 353, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 354 (1978); *Government Employees Insurance Co. v. Kligler,* 42 N.Y.2d 863, 864, 366 N.E.2d 865, 866, 397 N.Y.S. 777, 778 (1977). Applying this rule of construction to the policy, we agree with the district court that the ambiguous term "policy period" in Condition N must be given the meaning stated in Item 2. New England was entitled to cancel the policy only by accelerating the end of the policy period to some date prior to April 5, 1985, and its purported cancellation of the policy as of June 9, 1986, was hence ineffective.

Affirmed.