**FALCONE BROTHERS PARTNERSHIP, a Partnership, Edward W. Falcone, and Arthur Falcone, Plaintiffs,**

v.

**BEAR STEARNS & CO., INC., Steven Kirsch, and Steven Dantus, Defendants.**

**No. 87 Civ. 8627(KC).**

United States District Court, S.D. New York.

Oct. 10, 1988.

Nelson F. Zahia, Brizon, Zahia & Stapell, Buffalo, N.Y., for plaintiffs.

Fran M. Jacobs, Shea & Gould, New York City, for defendants.

OPINION AND ORDER

CONBOY, District Judge:

In January 1986, the individual plaintiffs, Edward W. Falcone and Arthur Falcone, opened up separate accounts with defendant Bear Stearns & Co., Inc. ("Bear Stearns") for the purchase and sale of securities and other property. Each account was governed by a written agreement ("Agreement I") which provided in pertinent part as follows:

It is understood that the following agreement to arbitrate does not consti-

tute a waiver of the right to seek a judicial forum where such waiver would be void under the federal securities laws.

The undersigned Agrees, and by carrying an account for the undersigned, you agree, that except as inconsistent with the foregoing sentence, *all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior or subsequent to the date hereof, shall be determined by arbitration* in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc. or the Board of Governors of the American Stock Exchange, Inc., as you may choose.... Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof....

No term or provision of this Agreement may be waived or modified unless in writing and signed by the party against whom such waiver or modification is sought to be enforced.

(emphasis added). One year later, plaintiff Falcone Brothers Partnership opened up a securities account with Bear Stearns, and that account was governed by a written agreement identical to Agreement I.

Thereafter, each of the three named plaintiffs (collectively "the Falcones") signed additional customer agreements with Bear Stearns for transactions in options. The relevant sections of the identical options agreements ("the supplemental agreements") read as follows:

With respect to any transaction effected by [Bear Stearns] on my behalf for the purchase and sale of any options contract issued by the Options Clearing Corporation (OCC), I agree and represent hereby as follows....

7. This agreement shall be considered as *supplementary* to any Customer's Agreement which I may have signed. *Except as specifically amended by this agreement, all of the terms and conditions thereof shall remain effective with respect to all open commitments in options now carried for my/our account as well as those thereafter made.*

8. ARBITRATION Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc. or the Board of Governors of the American Stock Exchange, Inc. as you may elect.... You understand that *this Agreement* to arbitrate does not constitute a waiver of your right to a judicial forum where such waiver would be void under the securities laws *and specifically does not prohibit you from pursuing any claims under the federal securities laws in any court of competent jurisdiction.*

(emphasis added).

In the days following "Black Monday"— October 19, 1987—a dispute arose between defendants [1] and the Falcones over the latters' accounts. Stated briefly, the Falcones accused defendants of selling their stocks and options without their knowledge, authorization, or approval. The securities were sold to satisfy options payments and margin calls which the Falcones assert they were at all times ready, willing, and able to pay. On December 7, 1987, the Falcones filed the instant complaint alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and New York State statutory and common law. Three weeks later, defendant moved for an order, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, compelling arbitration of the issues raised in this action and staying this action pending arbitration.

---

**1.** Defendant Steven Kirsch has been the Falcones' stock broker at Bear Stearns since early 1987. Defendant Steven Dantus is a managing director at Bear Stearns.

**34**

## DISCUSSION

The Arbitration Act ("the Act") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S. C. § 2. "The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement," *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (citing § 3 of the Act), "and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement," *id.* (quoting § 4 of the Act).

Defendants contend that the unqualified arbitration clause in paragraph 13 of Agreement I, as well as paragraph 8 of the supplemental agreement, mandates arbitration of any controversy arising out of defendants' handling of the Falcone's accounts, including the subject matter of this lawsuit. Seizing on the clause in paragraph 8 of the supplemental agreement which asserts that the agreement "specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction," the Falcones argue that their claims arising under the Securities Exchange Act of 1934 and RICO are exempt from mandatory arbitration. RICO, according to the Falcones, is a federal law which regulates "the purchase and sale of securities" and is thus a securities law contemplated by paragraph 8 of the supplemental agreement.

■ Before determining the scope and meaning of the relevant arbitration clauses, it is necessary to address a threshold conflict over the controlling rules of interpretation to be applied here. Relying on common law contract principles, the Falcones contend that any ambiguities in the customer agreements should be resolved in their favor since defendants drafted the agreements. *See Westchester Resco Co. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir.1987) ("Where an ambiguity exists in a standard-form contract supplied by one of the parties, the well established *contra proferentum* principle requires that the ambiguity be construed against that party."). This general principle of contract interpretation is, however, displaced in this context by the more specific rule requiring that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984) (quoting *Wire Service Guild v. United Press International*, 623 F.2d 257, 260 (2d Cir.1980)); *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 847 (2d Cir.1987); *See Also Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 126 (2d Cir.1986) (in reviewing broad arbitration clause with narrow exception, court should compel arbitration unless there is positive unambiguous assurance that dispute falls within narrow exception). Thus, the controlling rule requires that ambiguities be resolved in defendants' rather than plaintiffs' favor.

■ Turning to the agreements, it is clear that the clause in paragraph 8 of the supplemental agreement relied on by the Falcones supports, at best, a right to pursue securities claims in a judicial forum only with respect to options transactions. By their terms, the supplemental agreements relate exclusively to options transactions and supplement rather than displace previous agreements. Even with respect to options trading, "[e]xcept as amended by [the supplemental agreements] all of the terms and conditions [of the original customer agreements] remain effective with respect to all open commitments in options now carried for [the Falcone's accounts] as

well as those hereafter made." Supplemental Agreement Paragraph 8. *Cf. Jab Industries, Inc. v. Silex S.P.A.*, 601 F.Supp. 971 (S.D.N.Y.1985) (where subsequent agreements were captioned "supplemental," earlier agreement remained in full force and effect except to the extent of the limited changes set forth in supplemental agreements). The Falcones have offered neither legal authority nor sound logic to support their assertion that paragraph 8 of the supplemental agreements governs all of the transactions at issue in this lawsuit.

Though perhaps a closer question, the Court also concludes that paragraph 8 of the supplemental agreements does not grant the Falcones a right to a judicial forum to litigate claims arising out of options trading. In this connection, I find Judge Ward's reasoning in *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961 (S.D.N.Y.1987), *aff'd*, 847 F.2d 834 (2d Cir.1988), to be persuasive. There, the relationship between the defendant and each plaintiff was governed by at least one of three separate agreements. The parties who were members of the National Association of Securities Dealers ("NASD") were bound by the NASD Code of Arbitration Procedure which provided for arbitration of " 'any dispute, claim, or controversy arising out of or in connection with the business of any member.' " *Id.* at 966. One of the plaintiffs and the defendant also entered into a "Clearing Agreement" which provided that "[a]ll disputes and controversies relating to or any way arising out of this Agreement shall be settled by Arbitration." *Id.* at 967 (brackets in original). Finally, some of the parties were signatories to a third contract which was identical to the supplemental agreement in this case. *Id.*

In construing the relevant language of the supplemental agreement, Judge Ward concluded that:

> this language [provides] only that the Customer Agreement itself does not waive a customer's right to sue for securities violations in federal court, not necessarily to grant a right to bring a federal securities action. *Thus, if the customer is otherwise contractually obligated to arbitrate federal securities claims*

*(such as being bound to the rules of a self-regulatory organization) the Customer Agreement will not stand as a bar to arbitration.*

*Id.* at 967–68 (emphasis added). Here, Agreement I provided that all disputes, including disputes arising out of any other agreements between the parties, past, present, or future, would be resolved through arbitration. The clause relied on by the Falcones does not displace or amend this earlier, unqualified arbitration provision. Rather, it simply provides that the supplemental agreement *standing alone* does not prohibit the Falcones from pursuing securities claims in court. Whatever the Court's conclusion might be under a different rule of construction, it cannot here be said "with positive assurance" that the arbitration clause in Agreement I is not susceptible of an interpretation that covers the present dispute.

In the event that the Court grants defendants' motion, the Falcones request that they be permitted to conduct discovery, under the supervision of this court, on the subject matter of the disputes to be arbitrated. The law in this circuit, however, is that discovery on the subject matter of a dispute to be arbitrated should be denied in the absence of extraordinary circumstances. *See E.C. Ernst, Inc. v. Potlatch Corp.*, 462 F.Supp. 694, 695 n. 1 (S.D.N.Y.1978); *Bergen Shipping Co. v. Japan Marine Services, Ltd.*, 386 F.Supp. 430, 435 n. 8 (S.D.N.Y.1974). No extraordinary circumstances have been brought to the Court's attention.

Accordingly, defendants' motion to compel arbitration and to stay this action pending arbitration is granted, and plaintiffs' request for court-supervised discovery is denied.

SO ORDERED.