BRYANT-DURHAM ELECTRIC COMPANY, INC. v. DURHAM COUNTY HOS-
PITAL CORPORATION AND DURHAM COUNTY BOARD OF COUNTY
COMMISSIONERS

No. 7814SC534

(Filed 17 July 1979)

1. **Arbitration and Award § 1.1— contract provision for arbitration — invalidity in 1972**

A provision for arbitration in a 1972 construction contract was not binding since a controversy had to exist between the parties in order for them to make a binding contract for arbitration in 1972.

Electric Co. v. Hospital Corp.

2. **Arbitration and Award § 1.1— arbitration agreement—controversies in existence**

Correspondence between the parties in 1975 created a contract between them for arbitration; however, under G.S. 1-567.2 the agreement to arbitrate bound them to arbitrate only controversies existing at the time of the agreement.

3. **Arbitration and Award § 1— motion to compel arbitration—controversies not existing at time of agreement**

The trial court properly denied a motion to compel arbitration pursuant to an arbitration agreement where the movant made a demand for arbitration of controversies which were not in existence at the time the parties agreed to arbitrate.

4. **Arbitration and Award § 1— inapplicability of Federal Arbitration Act**

In order for the Federal Arbitration Act, 9 U.S.C. § 2, to apply, the transaction which is the subject of a contract must be a transaction in interstate commerce, and the Act does not apply because some of the materials used to perform a contract were shipped in interstate commerce. Therefore, the Federal Arbitration Act did not apply to the construction of the Durham County General Hospital.

APPEAL by movant from *Martin (John C.), Judge*. Judgment entered 7 March 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals 7 March 1979.

This is an appeal by the movant from an order denying its motion to compel the respondents to enter into binding arbitration. On 2 June 1972 the parties entered into a contract for the construction of the Durham County General Hospital. The movant was to serve as the electrical contractor and to complete its work by 15 March 1975. The contract provided for the arbitration of all disputes arising in connection with the contract. During the construction a dispute arose and on 22 August 1975, movant sent a letter to the architects on the project in which it stated that it had not been able to complete the project due to delays caused by the general contractor. In the letter the movant also stated the site availability and plans and specifications had not been followed. The movant then stated:

"We are therefore compelled and have no alternative but to seek recourse for the extensive and severe damages and losses we have suffered, are continuing to suffer, and doubtless will suffer until project completion.

Therefore, in accordance with the terms and conditions of General Condition 7 (Arbitration) of our contract with the

Owner, we herewith give the required notice and serve and signify our Demand for Arbitration as to the nature and extent of the responsibility of the Owner for our delay damages.

We have and are continuing to keep strict account of our costs, losses and damages, and will quantify same at the conclusion of our performance.

\* \* \*

. . . We signify, however, our willingness . . . to abate the empaneling of an Arbitration board and the commencement of arbitration hearings . . . until such time as project completion has been reached."

On 19 September 1975 the respondent Hospital Corporation replied to the plaintiff's letter as follows:

Mr. Robert Shackleford
Executive Vice President
Bryant-Durham Electric Company, Inc.
5102 Neal Road
Durham, North Carolina 27705

Dear Mr. Shackleford:

Your letter of August 22, 1975, addressed to Mr. L. Louis Cochran of Middleton, Wilkerson, McMillan, Architects which provides notification of your demand for arbitration has been acknowledged by the Architects' office. We concur in your demand for arbitration.

Our attention has been directed to a possible modification of the arbitration procedure which you may wish to consider. If mutually acceptable, we may wish to be governed by the "Construction Industry Arbitration Rules" dated March 1, 1974, published and administered by the American Arbitration Association, 140 West 51st Street, New York, New York 10020, rather than the procedure outlined in Section 7 of the General Conditions which may be outdated.

With your concurrence, it could be desirable for your Counsel and ours to examine the advisability of following the

procedure set forth in the "Construction Industry Arbitration Rules".

I shall be pleased to receive your response to this suggestion.

Very truly yours,

DURHAM COUNTY HOSPITAL CORPORATION

s / Thomas R. Howerton
Executive Director

On 18 May 1977 the architect assessed the movant with liquidated damages for delay in completing the contract. On 6 December 1977 the movant filed a motion to compel arbitration. It moved for arbitration on the alleged delay caused by the respondents and also for additional compensation as the result of a change order allegedly made on 20 February 1976.

The superior court on 7 March 1978 denied the motion for compulsory arbitration.

*Smith, Currie and Hancock, by John D. Sours and Robert O. Fleming, Jr., and Nye, Mitchell and Bugg, by John E. Bugg, for plaintiff appellant.*

*Bryant, Bryant, Drew and Crill, by Victor S. Bryant, Jr., and Lester W. Owen, for respondent appellees.*

WEBB, Judge.

[1]  In 1972 when the parties entered into the construction contract, arbitration was governed by Chapter 1, Article 45 of the General Statutes. This article provided that a controversy had to exist between the parties in order for them to make a binding contract for arbitration. *Skinner v. Gaither Corporation,* 234 N.C. 385, 67 S.E. 2d 267 (1951). The controversy in this case did not arise until after 2 June 1972. The provision for arbitration in the contract of that date is not binding.

[2]  The movant contends that the parties entered into an agreement for arbitration by correspondence between them in 1975. We hold that the letter from movant dated 22 August 1975 with the respondents' reply of 19 September 1975 created a contract

between the parties for arbitration. As we read the letter of 22 August 1975 it was a demand by movant for arbitration for the damages caused to it by delay in the performance of the contract. The reply of respondents was an unconditional acceptance. The language in this letter which suggested a possible alternative method of arbitration did not make the respondents' acceptance of the offer conditional. *Carver v. Britt*, 241 N.C. 538, 85 S.E. 2d 888 (1955). At the time this contract was made, Article 45A of Chapter 1 of the General Statutes governed arbitration agreements. In that article, G.S. 1-567.2 provides:

> (a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

Under this section the agreement to arbitrate made between the parties in 1975 would not bind them to arbitrate controversies not existing at the time of the agreement. It was not a provision of a contract for settling controversies in regard to the contract or controversies in regard to failure to perform under the contract. It was a contract to arbitrate controversies existing at the time of the agreement and binding to that extent under G.S. 1-567.2(a).

[3]   Although we hold that the agreement to arbitrate made between the parties in 1975 is binding on them as to controversies existing at that time we also hold the court properly denied the motion for arbitration. In its motion for arbitration the movant asked for arbitration of matters not in controversy at the time the agreement was made. The movant asked for arbitration as to a change order which movant alleged was made on 20 February 1976. The motion made no distinction between delays caused by respondents before 22 August 1975 and those caused after that date. It made no distinction in the penalty assessed by the architect for delays attributable to the respondent before and after 22 August 1975. Since the movant made a demand for arbitration

for controversies which were not in existence at the time the parties agreed to arbitrate, we hold the court properly denied the motion to compel arbitration.

[4]   The appellant also contends that the parties are bound by the Federal Arbitration Act.

9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 1 says:

"[C]ommerce", as herein defined, means commerce among the several States or with foreign nations . . . .

The movant contends that 9 U.S.C. § 2 should be given a broad interpretation so that it requires arbitration since some of the materials used by movant to perform the contract were shipped in interstate commerce. We note that if this is the proper interpretation of the Federal Arbitration Act there would be little need for the State to have adopted an arbitration act. Most contracts would be governed by the Federal Act. 9 U.S.C. § 2 provides that in order for it to govern there must be a contract "evidencing a transaction involving commerce . . . ." As we interpret this section the transaction which is the subject of the contract must be a transaction in interstate commerce. The construction of the Durham County General Hospital was not an act in interstate commerce and we hold the Federal Arbitration Act does not apply. *See Varley v. Tarrytown Associates, Inc.*, 477 F. 2d 208 (2d Cir. 1973).

Affirmed.

Judges MARTIN (Robert M.) and MITCHELL concur.