BURKE COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION v. THE SHAVER PARTNERSHIP

No. 7925SC800

(Filed 6 May 1980)

1. **Arbitration and Award § 1— Federal Arbitration Act—conflicting state law—applicability of Act**

    If the Federal Arbitration Act, 9 U.S.C. § 2, applies to a particular contract, the Act supersedes conflicting state law, notwithstanding a choice of law provision in the contract.

2. **Arbitration and Award § 1— Federal Arbitration Act—transaction involving commerce—interstate shipment of goods required**

    A "transaction involving commerce" within the meaning of the Federal Arbitration Act does not encompass transactions which do not involve or relate to actual physical interstate shipment of goods.

3. **Arbitration and Award § 1— contract for architectural services—inapplicability of Federal Arbitration Act**

    The Federal Arbitration Act did not apply to a contract between the parties, the essence of which was for defendant to provide architectural services

to plaintiff for the construction of two high schools, since the evidence did not show that the contract was a transaction involving commerce.

APPEAL by defendant from *Griffin, Judge.* Orders entered 17 May 1979 and 26 June 1979, in the Superior Court of BURKE County. Heard in the Court of Appeals 5 March 1980.

This is an action for damages allegedly resulting from defects in the design of the roof on a school owned by Plaintiff Board of Education. Plaintiff seeks $150,000.00 in damages from Defendant.

Defendant responded by demanding arbitration of the dispute pursuant to the Rules of the American Arbitration Association and moved for a stay of the action pending arbitration.

Plaintiff denied the existence of an agreement to arbitrate and obtained a Temporary Restraining Order restraining any further proceedings in the arbitration.

The Court entered an Order denying defendant's motion to stay the lawsuit, and allowing plaintiff's motion to stay further arbitration proceedings. The Court held that the Federal Arbitration Act, which would require arbitration of the dispute, did not apply. Defendant gave notice of appeal.

*Simpson, Baker, Aycock & Beyer, by Dan R. Simpson and Samuel E. Aycock, for the plaintiff.*

*Moore and Van Allen, by Jeffrey J. Davis, for the defendant.*

MARTIN (Robert M.), Judge.

The question dispositive of this appeal is whether the contract between the parties is a transaction involving interstate commerce. The trial court found that the contract did not constitute a transaction involving commerce, but we are not bound by those findings of fact, and may look at all the evidence to determine whether in fact the evidence does show that the contract was a transaction involving commerce. *Setzer v. Annas,* 286 N.C. 534, 212 S.E. 2d 154 (1975).

[1] It is now well settled that if the Federal Arbitration Act, 9 U.S.C. § 2, applies to a particular contract, the act supersedes conflicting state law, notwithstanding a choice of law provision in the contract. In *General Atomic Co. v. Felter,* 436 U.S. 493, 56 L.Ed. 2d 480, 98 S.Ct. 1939 (1978) a New Mexico State trial court judge

had enjoined General Atomic Company from pursuing arbitration under the Federal Act. The Supreme Court, in applying the Federal Act to these state court proceedings, held that a state court had no power to enjoin resort to arbitration under the Federal Act.

The contract in the case *sub judice* contained an arbitration clause but whether the contract evidences a transaction involving commerce is seriously in question. *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395, 18 L.Ed. 2d 1270, 87 S.Ct. 1801 (1967), involved a "consulting agreement" between the parties, a Maryland corporation and a New Jersey corporation. This consulting agreement was closely associated with a contract pursuant to which the plaintiff purchased the defendant's multi-state paint business and transferred the manufacturing operation from New Jersey to Maryland. The United States Supreme Court held that "[t]he consulting agreement was inextricably tied to this interstate transfer and to the continuing operations of an interstate manufacturing and wholesaling business. There could not be a clearer case of a contract evidencing a transaction in interstate commerce." *Id.* at 401, 18 L.Ed. 2d at 1276, 87 S.Ct. at 1804-05.

[2]  Justice Fortas, writing the opinion of the Court, referred by footnote to the legislative history of the Federal Arbitration Act in response to a dissent to his opinion written by Justice Black, who argued that the language "transactions involving commerce" should be limited to "contracts between merchants for the interstate shipment of goods." As noted by Justice Fortas, ". . . the House Report on this legislation . . . proclaims that '(t)he control over interstate commerce [one of the bases for the legislation] reaches not only the *actual physical interstate shipment of goods* but also contracts relating to interstate commerce.' " Id. at 401-02, 18 L.Ed. 2d at 1276, 87 S.Ct. at 1805 (citing H. R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924) ). (Emphasis added.) The point concerning this language in Justice Fortas' opinion is that, while denying Justice Black's contention that the Federal Arbitration Act should apply only to contracts between merchants *for* the *interstate shipment of goods*, it seems clearly to equate the term "interstate commerce" with the phrase "actual physical interstate shipment of goods."

Justice Fortas' argument is summarized as follows:

It would be remarkable to say that a contract for the purchase of a single can of paint may evidence a transaction in interstate commerce, but that an agreement relating to the facilitation of the purchase of an entire interstate paint business and its re-establishment and operation in another State is not.

*Id.* at 402, 18 L.Ed. 2d at 1276, 87 S.Ct. at 1805. It is thus manifest from *Prima Paint* that the term "transaction involving commerce" was not thereby expanded to encompass transactions which do not involve or relate to actual physical interstate shipment of goods.

In *Conley v. San Carlo Opera Company*, 163 F. 2d 310, (2d Cir. 1947) the plaintiff had contracted with the defendant for an option on plaintiff's services as an opera singer. A controversy arose, and the Opera Company claimed that the arbitration clause contained in the contract was governed by the Federal Arbitration Act and was therefore irrevocable. The court held that the contract did not evidence a transaction involving commerce, even though the plaintiff would be required to travel throughout the United States giving operatic performances. Thus, the act which consummated the contract was the singing and not the travel between the states.

*Electric Co. v. Hospital Corp.*, 42 N.C. App. 351, 256 S.E. 2d 529 (1979) involved a contract between an electrical contractor and the Durham County General Hospital Corporation, wherein the electrical contractor contended the Federal Arbitration Act applied because some of the materials which it used in completing the electrical contract had been shipped in interstate commerce. We rejected this argument, deciding that the shipment across state lines of materials necessary for the electrical contractor to complete its performance under the contract was incidental to, and not the essence of, the contract.

[3] In the case *sub judice*, the affidavit of John Shaver, a general partner of defendant, submitted in support of the proposition that the contract evidences a transaction involving interstate commerce states:

2. At the time the building which is the subject of this action was designed and built, The Shaver Partnership had

offices in Salina, Kansas, Michigan City, Indiana, and Hickory, North Carolina.

3. Virtually all of the design work done for the building which is the subject of this lawsuit was done in Michigan City, Indiana.

4. Even during the construction phase, most of the field work was done by personnel working out of the Michigan City, Indiana office.

5. Approximately 85% to 90% of all the work done by The Shaver Partnership in fulfillment of its contract with respect to the building that is the subject of this lawsuit was done in Michigan City, Indiana.

6. All of the bookkeeping and accounting records maintained by The Shaver Partnership with respect to the design and construction of the building that is the subject of this lawsuit were maintained in Salina, Kansas.

7. Payments made by Plaintiff in this action to The Shaver Partnership for work done in the design of the building that is the subject of this lawsuit were made to The Shaver Partnership's office in Michigan City, Indiana.

8. In the course of the design of the building that is the subject of this lawsuit, personnel from The Shaver Partnership had numerous dealings with representatives of building material suppliers from all around the country concerning the specification of building materials for the construction of the buildings.

9. In fact, The Shaver Partnership did indeed specify the use of materials manufactured by suppliers in many different states, for the construction of the building that is the subject of this lawsuit.

10. In addition, in the course of performing the contract for the design of the building that is the subject of this lawsuit, The Shaver Partnership consulted with an Indiana food service consultant for the design of food service facilities for the building.

11. Also, the structural engineering design work, required for the design of the building that is the subject of this lawsuit, was performed for The Shaver Partnership by Carl Walker Associates, whose offices are in Kalamazoo, Michigan.

However, it is evident that the essence of the contract was for the defendant to provide architectural services to plaintiff for the construction of two high schools. The architectural services were the very heart of the contract, that is the consummation of it. The above factors incidental to the contract, many of which might go to establish diversity of citizenship between the parties, do not establish that the essence of the contract between the plaintiff and defendant involve commerce, *e.g.*, the interstate shipment of goods.

The Federal Arbitration Act is "based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.'" 388 U.S. at 405, 18 L.Ed. 2d at 1278, 87 S.Ct. at 1807. (Citation omitted.) The Act does not apply in this case for that the evidence does not show that the contract was a transaction involving commerce. The order entered by the trial court is

Affirmed.

Judges CLARK and ERWIN concur.