In re MERCURY CONSTRUCTION
CORPORATION, Petitioner.
MERCURY CONSTRUCTION
CORPORATION, Appellant,

v.

The MOSES H. CONE MEMORIAL
HOSPITAL, Appellee.

Nos. 81–1009, 81–1042.

United States Court of Appeals,
Fourth Circuit.

Argued June 1, 1981.

Decided Nov. 24, 1981.

Certiorari Granted Feb. 22, 1982.
See 102 S.Ct. 1426.

ORDER

DONALD RUSSELL, Circuit Judge.

Upon consideration of the petition for rehearing, and with the concurrence of the active Circuit Judges, except Judge WIDENER and Judge HALL, who dissent from the denial of the petition,

IT IS ORDERED, That the petition for rehearing be, and it is hereby denied.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent to the denial of rehearing in this case.

As I have previously pointed out in dissent, the basic theme of the majority opinion, 4 Cir., 656 F.2d 933, is its lack of confidence in the North Carolina courts to enforce the Federal Arbitration Act. At the time the case was decided and the majority opinion was filed, I thought that lack of confidence was without foundation, and so expressed myself.

Unknown to us at the time the case was decided, but following argument, the Supreme Court of North Carolina had decided the case of *Burke County Public Schools, etc. v. Shaver, etc.,* 303 N.C. 408, 279 S.E.2d 816 (1981). *Burke* was a case on facts indistinguishable from those now before us and is one of the very cases[1] relied on by the majority to illustrate why the North Carolina courts would not try this

case under federal substantive law (the Federal Arbitration Act).

The gist of the majority decision here as shown by the opinion itself is as follows:

"This is a case where it can be fairly said to be doubtful whether the rights of Mercury as fixed by 'federal substantive law' will be recognized in the state court." P. 946.

Contrast that statement of North Carolina law as expressed in the majority opinion with North Carolina law as expressed by the North Carolina Supreme Court in *Burke:*

"This appeal presents two questions. First, whether the contract between plaintiff and defendant is 'a contract evidencing a transaction involving commerce' within the meaning of § 2 of the Federal Arbitration Act. [Footnote omitted] We conclude that it is. Second, whether the Federal Arbitration Act must be applied in state courts. We hold, for reasons given, that it must." 279 S.E.2d at p. 817.

Not only was the holding of the North Carolina Supreme Court that which I have just quoted, the opinion goes on in detail to provide as follows:

". . . Parties in a state court to a contract evidencing an interstate transaction should not be permitted to avoid arbitration when, had the action been brought in federal court, they would have been compelled to arbitrate. This much flows from the denomination of compulsory arbitration as a matter of substantive, rather than procedural, law." 279 S.E.2d at 824–825, note 16.

Additionally, the court in *Burke* not only held, p. 825, that the contract in question "must be submitted to arbitration pursuant to the federal act," as one of the reasons therefor it gave that the application of the federal substantive law "discourages 'forum shopping' ". *Burke,* p. 824.

1. The majority opinion relied on the decision in the North Carolina intermediate court of appeals which was reversed by the decision referred to in this paragraph.

Thus, the recent decision of the North Carolina Supreme Court, coming as it did after argument in this case but before decision, although unbeknownst to us at that time, but known to us prior to the time this order is entered denying rehearing, should have disabused this court of any notions it may have had that the North Carolina courts would not follow the federal substantive law. To deny rehearing in this case, even without mention of the reversal of one of the cases on which it principally depends, I find inexplicable.

The upshot of this case is that our court is treating a cause of action concerning the Federal Arbitration Act in many respects as general federal question litigation, which it is not, rather than as diversity litigation, which it is.

I am authorized to state that Judge HALL joins in this dissent.

### DONALD RUSSELL, Circuit Judge:

The dissent to the denial of rehearing of the *en banc* opinion herein misconceives the real reason on which that opinion rests and, unfortunately, would find the rationale for such opinion to be a "lack of confidence in the North Carolina courts to enforce the Federal Arbitration Act." The apparent basis for this conclusion is the discussion in the opinion of an issue which, though of importance, was not the decisive point. This issue related to whether the contract in this case was in interstate commerce. At the time the majority opinion was distributed the only decisions from a North Carolina appellate court on this question were the two decisions of the Court of Appeals of North Carolina cited in the majority opinion.[1] These decisions held that a contract such as that involved here was not in interstate commerce. We noted that fact and did suggest that such a construction of the

contract was plainly erroneous. Fortunately, the North Carolina Supreme Court, in a decision which reviewed the issue with painstaking care has corrected the error of the Court of Appeals.[2] But the dissent seems to assume by this decision of the North Carolina Supreme Court, the *ratio decidendi* of the majority opinion is completely undermined. This is in error, as a reading of the majority opinion will demonstrate.

The real issue in this case was: Under what circumstances is it appropriate for a federal court to stay its hand in favor of adjudication by a state court, where the point is the application of federal law. We concluded in the majority opinion "that," in the words of *Will*, "a federal court being seized of jurisdiction of a case, [is] not to stay its proceedings in deference to a state court action involving the same issues unless there [are] 'exceptional circumstances' justifying such stay . . . ."[3] And, as Justice Blackmun pointed out in what was the prevailing opinion in *Will*,[4] this requirement of "exceptional circumstances" is particularly rigorous if the "case turns on federal issues," as it does here. That was the controlling rule accepted by the majority in this case. Applying it to the facts of this case, we concluded:

"Unlike Judge Will in *Calvert*, the district court [in this case] found 'no exceptional circumstances' justifying a departure from the *Colorado River* [*Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483] rule of 'unflagging obligation' of the federal court to maintain federal jurisdiction, despite the pendency in state court of a similar action between the parties. Without such finding of 'exceptional circumstances,' the district court had no right to stay the federal proceedings in this case."

1. *Burke Cty. Pub. Sch. Bd. of Ed. v. Shaver Partner.*, 46 N.C.App. 573, 265 S.E.2d 481 (1980); *Bryant-Durham Elec. v. Durham County Hospital*, 256 S.E.2d 529 (42 N.C.App. 351, 1979).

2. *Burke County Public Schools, etc. v. Shaver, etc.*, 279 S.E.2d 816 (1981).

3. Pp. 943–44.

4. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 667–68, 98 S.Ct. 2552, 2559–60, 57 L.Ed.2d 504 (1978).

Such was the heart of our decision; such was the basis upon which it was decided. There was in this reasoning no expression of a "lack of confidence in North Carolina courts" faithfully to discharge their duty and we deplore any suggestion to that effect, especially because of the mutual respect that has always marked our relations with the North Carolina courts. It was, on the contrary, merely an application of what we conceived to be the prevailing opinion in *Will.*