(642 P.2d 127)
No. 52,889

R. J. PALMER CONSTRUCTION CO., INC., *Plaintiff-Appellee,* v. WICHITA BAND INSTRUMENT CO., INC., and GARY L. RAY and JANE A. RAY, *Defendants-Appellees,* v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Third Party Defendant-Appellee,* and J. CRAIG MANN, *Third Party Defendant-Appellant.*

Opinion filed March 11, 1982.

*David A. Gripp,* of Crockett and Gripp, of Wichita, for appellant.

No appearance by appellees.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

ABBOTT, J.: The issue in this appeal is whether the third party defendant, J. Craig Mann, is entitled to arbitration of his dispute with the defendants Wichita Band Instrument Co., Inc., and Gary L. Ray and Jane A. Ray.

The problem is presented as follows: The plaintiff, R. J. Palmer Construction Co., Inc., (Palmer) commenced an action against defendants, Wichita Band Instrument Co., and Gary L. Ray and Jane A. Ray, alleging they are indebted to Palmer in the amount of $5,634 for labor and material furnished in constructing and repairing a business building for defendants. Defendants answered and counterclaimed, alleging breach of contract and breach of express and implied warranties. The dispute apparently arose because of leaks in the roof of the new building. Defendants then filed a third-party petition against J. Craig Mann (Mann), the appellant in this case, and United States Fidelity and Guaranty Company (USF&G), which issued a performance bond and a labor and material payment bond guaranteeing performance by Palmer on the construction contract with defendants. Defendants employed Mann to provide architectural services which included designing the building, drawing specifications and representing the defendants (who are now also third-party plaintiffs) in the administration and supervision of the construction contract. Defendants sought damages for losses suffered by reason of Mann's alleged malfeasance and misfeasance. Mann counterclaimed against Gary Ray for $740 allegedly due and owing on the contract of employment.

Mann subsequently filed a motion to compel the defendants to submit their claim against him to arbitration pursuant to his contract with them and to stay the case until arbitration was completed. The trial judge denied the motion and Mann appeals. None of the defendants filed a brief on appeal.

Mann contends on appeal that by virtue of the arbitration clause in the contract he is entitled to have his dispute with the defendants submitted to arbitration, pursuant to the Kansas Uni-

form Arbitration Act (K.S.A. 5-401 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

The trial court's ruling, as we understand it, is that the contract did not evidence a transaction involving commerce within the meaning of the Federal Arbitration Act, so federal law concerning enforcement of arbitration agreements would not apply; and that the Kansas Uniform Arbitration Act does not apply because the action essentially involved a claim in tort.

The Kansas Uniform Arbitration Act, unlike the Uniform Arbitration Act, prohibits parties from enforcing a contractual provision to arbitrate a "claim in tort." The Federal Arbitration Act is the same as the Uniform Arbitration Act in that if it is otherwise applicable, it applies regardless of whether the action sounds in tort or in contract. If the federal act is applicable to a controversy, it will apply whether the action is pending in state or federal court. *Pathman Constr. Co. v. Knox Co. Hosp. Assn.,* 164 Ind. App. 121, 326 N.E.2d 844 (1975). Although Mann comes perilously close to failing to sustain his burden of proof that the contract evidences a transaction involving commerce, we conclude that the contract does evidence a transaction involving commerce and the trial court erred in its ruling that no commerce was involved.

The federal act applies to the facts of this case if the transaction involves commerce (9 U.S.C. § 2), and that question is governed by federal substantive law. *Janmort Leas., Inc. v. Econo-Car Intern.,* 475 F. Supp. 1282, 1286 (E.D.N.Y. 1979); *E. C. Ernst, Inc. v. Manhattan Const. Co. of Texas,* 551 F.2d 1026, 1040 (5th Cir. 1977), *cert. denied* 434 U.S. 1067 (1978). The Federal Arbitration Act applies in state courts as well as federal, and the act requires state courts to enforce an applicable arbitration clause despite contrary state law or policy. *Allison v. Medicab Int'l.,* 92 Wash. 2d 199, 597 P.2d 380 (1979).

In the case at bar, the trial judge, in determining the contract did not evidence a transaction involving commerce, relied on *Electric Co. v. Hospital Corp.,* 42 N.C. App. 351, 256 S.E.2d 529 (1979), wherein the North Carolina Court of Appeals held that a contract between an owner and a subcontractor did not evidence a transaction involving commerce under the Federal Arbitration Act. The contract contained an arbitration agreement, but the subject of the contract was the construction of the Durham County General Hospital which the North Carolina Court of

Appeals did not consider to be an act in interstate commerce. *Electric Co.* does not discuss any facts concerning involvement in commerce. It cited as authority *Varley v. Tarrytown Associates, Inc.,* 477 F.2d 208 (2d Cir. 1973), which held that a contract providing for arbitration was within the Federal Arbitration Act, because it contemplated that a textile consultant would evaluate fabrics manufactured throughout the United States and foreign countries.

Although the North Carolina Supreme Court did not specifically overrule the *Electric Co.* case, it clearly disemboweled it in *Burke Cty. Public Sch. v. Shaver Partnership,* 303 N.C. 408, 279 S.E.2d 816 (1981). The North Carolina Court of Appeals had considered an architect's demand for arbitration in an action brought by a school board against the architect, alleging damages resulting from a defective roof design. The contract provided for the defendant to supply architectural services to the school board for the construction of two high schools. The Court of Appeals held that the Federal Arbitration Act did not apply because the essence of the contract did not involve the interstate shipment of goods. *Bd. of Education v. Shaver Partnership,* 46 N.C. App. 573, 265 S.E.2d 481 (1980). The North Carolina Supreme Court reversed the Court of Appeals, stating that it was now "beyond argument that personal service contracts whose 'essence' does not involve or relate to, *i.e.,* which do not contemplate or call for, the interstate shipment of goods may nonetheless evidence a transaction involving commerce within the meaning of the Federal Arbitration Act." 279 S.E.2d at 820.

Fifteen cases are cited in footnote nine to support the above statement. Interestingly enough, the only mention the Supreme Court made to the *Electric Co.* case is in that same footnote where it stated, *"But see . . . ."* The North Carolina Supreme Court held that the dispute was subject to arbitration, relying on *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2nd Cir. 1972), for the proposition that when substantial interstate activity is contemplated in a contract of personal service with a business engaged in interstate commerce, the contract is subject to the Federal Arbitration Act. Two of the stated reasons for finding that the parties contemplated substantial interstate activity were that the architect conferred with suppliers from various states, and he specified the use of materials manufactured in other states.

In *Metro Industrial Painting Corp. v. Terminal Const. Co.,* 287 F.2d 382 (2d Cir.), *cert. denied* 368 U.S. 817 (1961), the Second Circuit Court of Appeals stated:

"The significant question, therefore [in determining whether a contract evidences a transaction involving commerce], is not whether, in carrying out the terms of the contract, the parties *did* cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they *contemplated* substantial interstate activity. Cogent evidence regarding their state of mind at the time would be the terms of the contract, and if it, on its face, evidences interstate traffic . . . the contract should come within § 2. In addition, evidence as to how the parties expected the contract to be performed and how it was performed is relevant to whether substantial interstate activity was contemplated." 287 F.2d at 387 (emphasis original).

In the case at bar, Mann has shown that the use of redwood siding in the construction of the building was contemplated by the parties. It was specified by Mann and was used in the construction. Indeed, it is alleged that at least part of the water penetration problem is related to the use of redwood. The redwood was obviously shipped into Kansas through interstate commerce, and was so contemplated by the parties. In addition, the building presumably was to be used to house and sell musical instruments and related items that would be moved in interstate commerce, a fact which would have been known to all parties when the agreement was entered into.

In *Episcopal Housing Corp. v. Federal Ins. Co.,* 269 S.C. 631, 239 S.E.2d 647 (1977), the Supreme Court of South Carolina considered a suit by a landowner against an architect, a contractor and the Federal Insurance Company for damages from water leaking into the completed structure. The architect and contractor wanted to arbitrate their dispute with the landowner, and the trial court ordered arbitration. The Supreme Court held it was apparent from the construction contracts that materials from outside the state would be used in construction, and that the contracts fell within the Federal Arbitration Act as ones in which transactions in interstate commerce were evident. Federal Insurance Company was not a party to the contracts providing for arbitration, and the landowner contended that as a result arbitration could not be ordered. The South Carolina Supreme Court followed the well-established arbitration rule, which states:

"Under the Federal Arbitration Act, an agreement between two or more parties to

submit their disputes to arbitration is not rendered unenforceable merely because there are additional parties to the disputes who are not bound by an arbitration agreement. *Hamilton Life Insurance Company of New York v. Republican National Life Insurance Company,* 408 F. (2d) 606 (2d Cir. 1969); *Hilti, Inc. v. Oldach,* 392 F. (2d) 368 (1st Cir. 1968)." 269 S.C. at 641.

The construction contracts in the preceding cases were all considerably larger than the one before us and frequently involved additional factors; but, courts have consistently held that contracts to design and construct buildings entirely within a state between parties domiciled in the state may involve commerce and fall within the scope of the Federal Arbitration Act when construction materials come from other states. See also *Northwest Mechanical v. Public Utilities Com'n.,* 283 N.W.2d 522 (Minn. 1979); *Electronic & Missile Facilities, Inc. v. United States,* 306 F.2d 554 (5th Cir. 1962), *reversed on other grounds* 374 U.S. 167 (1963); *Metro Industrial Painting Corp. v. Terminal Const. Co.,* 287 F.2d 382; *C.P. Robinson Const. Co. v. National Corp. for Hous. Part.,* 375 F. Supp. 446 (M.D.N.C. 1974).

We are convinced the trial court erred in refusing to grant Mann's motion to compel those subject to the contract which provided for arbitration to submit to arbitration in accordance with the terms of the agreement.

Because of our holding, the remainder of the issues are moot.

Reversed and remanded with directions.