In re MERCURY CONSTRUCTION CORPORATION, Petitioner.

MERCURY CONSTRUCTION CORPORATION, Appellant,

v.

The MOSES H. CONE MEMORIAL HOSPITAL, Appellee.

Nos. 81–1009, 81–1042.

United States Court of Appeals, Fourth Circuit.

Heard En Banc June 1, 1981.

Decided Aug. 12, 1981.

Widener and K. K. Hall, Circuit Judges, dissented and filed opinion in which they each joined.

Stanley D. Bynum, Joseph B. Mays, Jr., Birmingham, Ala. (Bradley, Arant, Rose & White, Charles E. Nichols, Lindsay R. Davis, Jr., Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C., on brief), for Mercury Const. Corp.

Jack W. Floyd, Greensboro, N.C. (Stephen P. Millikin, Douglas W. Ey, Jr., Smith, Moore, Smith, Schell & Hunter, Greensboro, N.C., on brief), for The Moses H. Cone Memorial Hospital.

Before WINTER, Chief Judge, and BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE and ERVIN, Circuit Judges, sitting *en banc.*

DONALD RUSSELL, Circuit Judge:

The appellant Mercury Construction Company (hereafter Mercury)[1] sought in this action arbitration under the Federal Arbitration Act[2] of certain disputes between it and the Moses H. Cone Memorial Hospital (hereafter Hospital),[3] under a construction contract between Mercury and the Hospital. Federal jurisdiction was properly premised on diversity. The district court denied arbitration, pending disposition of a state action by the Hospital against Mercury and J.N. Pease Associates, (hereafter Architect),[4] for declaratory judgment denying arbitration. Mercury seeks relief both by way of a petition for mandamus and by appeal. We reverse.

A summary of the facts leading up to the two actions is necessary to an understanding of the issues. In stating these facts, we have followed the allegations of the parties in their respective pleadings or presentations to the Court. On July 15, 1975, Mercury and the Hospital entered into a construction contract for Hospital additions. The agreed contract price was several million dollars. The contract, concededly drafted by the attorneys, or agents for the Hospital, includes a very broad arbitration clause covering "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof," subject to the requirement that any such claim shall first be submitted to the "Architect," as defined in the contract, and that no demand for arbitration shall be made "until the earlier" of the Architect's written decision on the claim or "the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date." The time for filing any claim is declared to be "within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

The Architect for the project is designated and identified in the contract. He was selected by the Hospital and was declared in the contract to be "the Owner's representative during construction and until final payment," to whom, as the "interpreter of the contract" "[a]ll papers required to be delivered to the Owner" should be delivered, to whom "[a]ny notice to or demand upon the Owner [should] be ... given," and to whom any "[c]laims, disputes and other matters in question [should] be referred initially ... for decision."

Construction under the contract began in July, 1975 and was to be completed within 1200 consecutive calendar days (or approximately 40 months). Because of change orders and other problems work time extension of 334 days was agreed upon. This meant that the contract time for completion was fixed at October 14, 1979. In October, 1977, as work under the contract was pro-

---

1. Mercury is a Delaware corporation with its principal place of business in Alabama.

2. 9 U.S.C. § 1 *et seq.*

3. The Hospital is chartered under the laws of North Carolina.

4. The Architect is a North Carolina corporation with its principal place of business in Charlotte, North Carolina.

ceeding, Mercury asserts in an affidavit of its Senior Construction Manager, not contested in the record by the Hospital, that "at a meeting with the Architect and the Owner, Mercury was requested to hold its claim for delay and impact costs until after the work was completed. Mercury agreed to do this." There was substantial completion of the project on February 12, 1979 and final inspections were had on June 12, 1979. Various "punch list items," however, continued to be worked on thereafter. The record does not indicate when these "punch list items" were finally completed.

At any rate, in January, 1980, Mercury submitted to the Architect its claim for additional payment on account of "delays and impact inefficiencies," etc., which Mercury contends under the agreement of October, 1977 with the Architect, was to be submitted only after the work had been completed. According to the Hospital's claims, the Architect reviewed this claim with Mercury over a period of several months and apparently succeeded in inducing Mercury to reduce its claim substantially. The Hospital claims it was completely ignorant of all this, however, until April 17, 1980, at which time, according to its allegations, its Architect "furnished to Cone Hospital various written materials by way of information, including a copy of a narrative statement of the Mercury claims." [5] However, the Hospital avers that its counsel took over the discussions of the claims with Mercury in May, 1980. Hospital's counsel stated to Mercury's representative, according to Mercury's affidavits, that the businessmen who ran the Hospital "would need additional information regarding the claim before undertaking negotiations in earnest." In order to provide this information, a meeting was held in Birmingham, Alabama, on August 12, 1980. Present were counsel for the Hospital, one of its trustees, representatives of the Architect, and representatives of Mercury, including its counsel. At that conference, Mercury went over its claim in detail with the parties and offered

the Hospital access to its files. The Hospital asked that copies of the files be mailed to its expert who had been employed to assist it in assessing the claim but who was unable to attend that meeting because of a schedule conflict. It was further agreed at this meeting that, provided the Hospital's expert had completed his review of the claims, another meeting on the claim would be held on October 13.

On October 6, Mercury's counsel telephoned the Hospital's counsel to inquire whether the Hospital's expert had completed his review of the claims and thus would be prepared to meet as tentatively agreed on October 13. The Hospital's counsel advised Mercury's counsel that he would advise Mercury's counsel on October 7 if the meeting date would be satisfactory. On the afternoon of October 7, Hospital counsel advised Mercury's counsel by telephone that the Hospital intended to offer no money to settle Mercury's claim and was filing immediately in state court a complaint for a declaratory judgment "that it did not have to arbitrate and that it owed Mercury nothing (but that if it did owe Mercury money, the Architect in turn owed that money to the Hospital)." Mercury's counsel advised Mercury of this conversation and Mercury instructed its counsel to file an arbitration demand. Counsel mailed such demand on the morning of October 9, 1980.

The Hospital did file its action in the state court on the morning of October 8, 1980, naming as defendants Mercury and the Hospital's Architect. Service of the action was made on Mercury on October 9, 1980. In its complaint, the Hospital alleges essentially, so far as Mercury is concerned, that there is no "factual or legal basis" for Mercury's claim and that such claim is barred "by the applicable statute of limitations." It also alleges that "Mercury has not demanded arbitration and has no right under the contract to have these claims or disputes submitted to arbitration," adding that Mercury has lost its right to arbitra-

---

**5.** Mercury has submitted an affidavit that, on information and belief, the Architect made a favorable decision on at least certain parts of Mercury's claims. This statement has not been contradicted by the Hospital in its showing in this Court.

tion by "failure to make timely demand for arbitration" and has "waived its right to arbitrate and is barred from submitting these claims to arbitration by laches and estoppel," all resulting "in substantial prejudice to Cone Hospital."

In its charges against the Architect as defendant in its state court action, the Hospital asserted various delinquencies in the performance of its duties, including premature acceptance of parts of the structure before such parts were properly usable and delays in making decisions and in "preparing and forwarding requests for proposals, revised drawings, instructions and other information to the contractor." With particular reference to the claim of Mercury, the Hospital charged in its complaint that the Architect had been negligent in connection therewith in not "requiring disposition of claims and disputes during the course of the work as required by the contract provisions," by procrastinating and failing "to rule on matters in dispute during the course of the work; by failing adequately to represent the interests of Cone Hospital; by not advising Cone Hospital promptly of the claims being asserted by Mercury; by breaching the fiduciary duty which Pease [the Architect] owed to Cone Hospital; and by other ways not specifically set forth hereinabove." Significantly, there is no charge of any conspiracy, or illegal combination on the part of Mercury and the Architect. By way of relief it sought judgment "that there is no right to arbitration, and that arbitration be stayed; ..., that there is no liability on the part of Cone Hospital to Mercury ...;" and "that should it be determined that any amount [if there is any] as owed by Cone Hospital to Mercury, that it be determined and declared that Cone Hospital is entitled to be fully indemnified and reimbursed...." It demanded a jury trial on all issues.

After filing its complaint, the Hospital secured on October 15, 1980, *ex parte*, without any notice to Mercury, an injunction from the state court barring Mercury "from taking any action or actions directed toward arbitration of disputes between The Moses H. Cone Memorial Hospital and Mercury Construction Corporation until the trial provided for by N.C.G.S. § 1–567.3(b) has occurred, and until the Superior Court has issued its Order as contemplated by this statute; ...." Mercury objected to this stay and, by order dated October 27, 1980, the stay was dissolved. In the meantime Mercury had filed this action, alleging diversity between the plaintiff and the defendant, and seeking relief by way of an order of arbitration and stay of judicial proceedings pending such arbitration pursuant to the terms of the United States Arbitration Act. Mercury, also, petitioned for the removal of the state action filed by the Hospital to the federal court. Following removal of that state action, the Hospital moved for the remand of its action to the state court and for a stay of the federal action begun by Mercury pending resolution of the state court action. The district court granted remand, finding that the action between Mercury and the Hospital "was not separate and independent from the claim or cause of action against Pease [the Architect]," and that there was accordingly not diversity between the parties. It, also, stayed the action before it "pending resolution of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp. and J. N. Pease Associates*, 80 CvS. 6787, in the North Carolina General Court of Justice, Superior Court Division (Greensboro)." In reaching this decision, it said that the state action "involve[d] the identical issue of arbitrability of the claims of Mercury Construction Corp. against the Moses H. Cone Memorial Hospital which is involved in this action." In finding a stay appropriate in such a situation, the district court cited and relied on *E. C. Ernst, Inc. v. Potlatch Corp.*, 462 F.Supp. 694, 699–701 (S.D.N.Y.1978).

Mercury has sought review of that decision of the district court to stay the federal action by both mandamus and by direct appeal under 28 U.S.C. §§ 1291 and 1292(a). It seems agreed, however, that under the prevailing rule in this Circuit, Mercury was entitled to a direct appeal from the district

court decision and we shall review the decision below as an appeal.[6]

The real issue in this case, determinative of this appeal, is the right of the plaintiff to an order of arbitration by the district court of its dispute with the Hospital pursuant to the Federal Arbitration Act, and whether that right, if it exists, may be frustrated by the "reactive" filing of a state declaratory action by the Hospital asserting the non-arbitrability of the dispute before Mercury had any real opportunity to seek arbitration. The resolution of this issue involves primarily the construction and application of the Federal Act.

By its express language the Federal Act applies where there is "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ...." 9 U.S.C. § 2. The constitutional validity of such an Act is found in the incontestable federal control over interstate commerce. *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 127 (1967). The determination whether the contract is one " 'evidencing a transaction invoking [interstate] commerce,' " is a question on which "federal rules of contract construction and interpretation govern." *Janmort Leas., Inc. v. Econo-Car Intern.*, 475 F.Supp. 1282, 1286 (E.D.N.Y.1979). The Act, however, does not include language conferring independent federal jurisdiction over an action thereunder. In order for a plaintiff to assert rights under it in a federal forum, he must establish an independent jurisdictional basis, such as diversity. *Kallen v. Dist. 1199, Nat. U. of Hospital & Health*, 574 F.2d 723, 726 n. 6 (2d Cir. 1978); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 408 (2d Cir. 1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37; *Paul Allison, Inc. v. Minikin Storage of Omaha*, 452 F.Supp. 573, 574 (D.Neb.1978); *Warren Bros. Co. v. Community Bldg. of Atl., Inc.*, 386 F.Supp. 656, 663 (M.D.N.C. 1974); *Litton RCS, Inc. v. Pennsylvania Turnpike Commission*, 376 F.Supp. 579, 585 (with citation of all the authorities) (E.D. Pa.1974), *aff'd*, 3 Cir., 511 F.2d 1394. But if, assuming diversity of the parties, an action meets the jurisdictional requirements of the Act, that action is enforceable in the state courts as well as in federal courts but *in either event it is governed by the federal substantive law developed in connection with the federal Act and not by state law.* *E.C. Ernst, Inc. v. Manhattan Const. Co.*, 551 F.2d 1026, 1040 (5th Cir. 1977) (any questions under the Act are matters of "federal law"); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, supra, 271 F.2d at 406; *Pathman Const. Co. v. Knox County Hospital Ass'n.*, 164 Ind.App. 121, 326 N.E.2d 844, 851 (1975); *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 636, 239 S.E.2d 647 (1977).[7]

In determining these principles of "substantive federal law," which govern the application of the Federal Act, the courts have begun by looking first at the purposes of the Act itself. As declared in *Prima*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06, the

---

**6.** In addition to our own case, *Amdur v. Lizars*, 372 F.2d 103 (4th Cir. 1967), sustaining appealability, *see also to the same effect: Buffler v. Electronic Computer Programming Inst., Inc.*, 466 F.2d 694, 696–99 (6th Cir. 1972); *Druker v. Sullivan*, 458 F.2d 1272, 1274 n. 31 (1st Cir. 1972); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980, 982–83 (9th Cir. 1970); and *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n. 1 (1st Cir. 1968).

**7.** In *Robert Lawrence*, the Court said (pp. 406–07):

"We think it is reasonably clear that the Congress intended by the Arbitration Act to create a new body of federal substantive law affecting the validity and interpretation of arbitration agreements .... This is a declaration of national law equally applicable in state or federal courts."

In *Episcopal Housing Corp.*, the Court added (239 S.E.2d pp. 649–50):

"The Federal Arbitration Act was enacted pursuant to the commerce clause, thereby superseding the South Carolina common law. The Federal Arbitration Act has been accorded supremacy over the common law of numerous states by the federal courts ....

"Likewise, numerous states have held that the Federal Arbitration Act is enforceable in the state courts, regardless of their existing common law."

purpose of the Act was explicitly declared to be to provide an "arbitration procedure, when selected by the parties to a contract, [that would] be speedy and not subject to delay and obstruction . . . ." And the "federal substantive law" which has been developed to accomplish this purpose has been found in the specific language in the Act itself or has been deduced in judicial decisions from the purposes and language of the Act.

Section 4 of the Act, after establishing the specific issue to be resolved in an action under the Act, directs the court to order arbitration once it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," and Section 3 requires a stay of all proceedings "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." [8]

 It is obvious from these statutes that in a case such as this, there are but two facts which a plaintiff seeking arbitration must establish: (1) The making of the agreement and (2) the breach of the agreement to arbitrate. This was recognized by the district court which decided this case. In *C. P. Robinson Const. Co. v. National Corp. for Hous. Part.*, 375 F.Supp. at 446, 451, the Court said:

"The district court [in an action under the Arbitration Act] must hear the parties and on being satisfied that (1) the making of the agreement for arbitration is not in issue and (2) the failure to comply with the agreement is not in issue, the court must order the parties to proceed to arbi-

tration in accordance with the terms of the agreement." [9]

 Section 3, it is true, would deny the right to a stay of proceedings in favor of arbitration if it can be said that the applicant for the stay is "in default in proceeding with such arbitration." It is often likened to waiver or laches or estoppel, but these terms are used not in their traditional sense but are to be given a definition and application in line with the statutory purposes and preferences reflected in the Act. But "default" in this sense is not to be lightly inferred in view of the statutory favor for arbitration.[10] Thus, mere "delay in making an arbitration demand is not a default within the meaning of Section 3." *Halcon International, Inc. v. Monsanto Australia, Ltd.*, 446 F.2d 156, 161 (7th Cir. 1971); [11] it is only when this delay results in actual prejudice that it may amount to "default" within the Act. *Batson Y. & F.M. Gr., Inc. v. Saurer-Allma, etc.*, 311 F.Supp. 68, 72 (D.S.C. 1970). These are two situations and only two situations in which such prejudice, under the federal decisions, may rise to the level of "default" *under the Act* and these situations are generally described under the general classification of "waiver." These two types of "waiver" are correctly identified in *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 728 (8th Cir. 1976).

 The first type of waiver identified in *N&D Fashions* and qualifying as a "default" occurs "when a party 'actively participates in a lawsuit or takes other action inconsistent with' the right to arbitration." *Id.* at 728. In *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291, 293

**8.** *Prima*, 388 U.S. at 402, 87 S.Ct. at 1805.

**9.** The Court must, in resolving the issues established by these Sections, particularly "avoid reaching the merits of arbitrable issues." *Drivers, Chauffeurs, etc. v. Akers Motor Lines*, 582 F.2d 1336, 1342 (4th Cir. 1978); *see also Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

**10.** *Singer Company v. Tappan Company*, 403 F.Supp. 322, 332–34 (D.N.J. 1975), *aff'd*, 544 F.2d 513 (3d Cir. 1976).

**11.** For an extreme example of this, *see Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665, 667–68 (S.D.N.Y.1966), in which the party seeking the stay had delayed to request arbitration for some 10 years after the contract default occurred and for 5 years after suit in the state court for breach of contract had been begun. *See also Hilti, Inc. v. Oldach, supra*, 392 F.2d at 369, involving 2 years' delay.

(2d Cir. 1965), Judge Friendly stated that "the earliest point at which such preclusion [i. e., waiver as used in this sense] may be found [in an arbitration case] is when the other party files an answer on the merits." This does not mean, though, that the filing of such an answer will always amount to a waiver. In *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330 (4th Cir. 1971), we said that "a default [within the Act] does not automatically result from a delay or from the filing of responsive pleadings." And it is clear that the removal of a state action is not to be deemed a "default" or "waiver" in this sense. *Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc.*, 393 F.Supp. 161, 162 (W.D.N.C.1974), aff'd., 513 F.2d 1171 (4 Cir. 1975). It is only the "[s]ubstantially invoking the litigation machinery [which will] qualif[y] as the kind of prejudice . . . that is the essence of waiver" in this context. *E. C. Ernst, Inc. v. Manhattan Const. Co.*, 559 F.2d 268, 269 (5th Cir. 1977). And whether there is "default" or "waiver" in this sense is a question solely for the court itself to resolve.

The second type of "default" or "waiver" identified in *N&D Fashions, supra*, "applies to bar arbitration when the process would be inequitable to one party because relevant evidence has been lost due to the delay of the other." [12] This type of "waiver" which may bar arbitration was earlier described in *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 571 (2d Cir. 1968) thus:

> "The purpose of laches is simply to relieve a decision-making body of the duty to resolve, and to prevent one party from having to prove, issues as to which the relevant evidence has been lost due to the delay of the other party. The only issues which the court is authorized to consider on a motion to compel arbitration are ones which pertain to 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the

same,' 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin*, supra, 388 U.S. at 403–404, 87 S.Ct. 1801 [at 1805–1806]. If one of these issues is disputed before the court, and if one party claims that its ability to present proof in relation thereto has been prejudiced through the delay of the other, the court may consider whether it is fair to permit the dilatory party even to invoke its processes under the Act." [13]

But "waiver" or "estoppel" in this sense as constituting "default" under the Act presents a question to be resolved by the arbitrator and not by the court. *Halcon International, Inc. v. Monsanto Australia Ltd., supra*, 446 F.2d at 160–163 (". . . laches is to be determined by the arbitrators"); *N&D Fashions, supra*, 548 F.2d at 728; *Janmort Leas., Inc. v. Econo-Car Intern., supra*, 475 F.Supp. at 1290. As the Court in *Trafalgar* stated (401 F.2d at 572):

> "laches is not a technical legal issue which only a judge is competent to decide. Rather in the often esoteric field of commercial dealings, and in admiralty, it would seem that the severity of prejudice suffered through delay, and the reasonableness of excuses offered by the dilatory party, the elements of laches, might be resolved better where resort is had to the expertise of the arbitrators."

Apart from "laches," there are two other grounds which are occasionally asserted as barring arbitration but which the federal courts have consistently ruled, as a matter of "federal law," are not valid bars to arbitration. One of these grounds concerns the situation where a non-arbitrable claim is joined in the action with an arbitrable claim. The courts have uniformly held that the arbitrability of the arbitrable claim is not to be defeated or delayed because it is joined in the litigation with other issues not subject to arbitration. This principle is illustrated in *Janmort Leas., supra*, 475 F.Supp. at 1290, where the Court said:

---

**12.** 548 F.2d at 728.

**13.** The language of the Court on judicial review must be taken as limited to the issues which are otherwise properly before the Court, *i. e.*, the issues of whether, first, there is a contract to arbitrate, and second, a refusal to arbitrate, see *N&D Fashions, supra*, 548 F.2d at 728 n 9, but does not apply to other types of claims or "laches."

"That a controversy involves some claims which are not subject to arbitration will not preclude a court from directing arbitration of those claims which are."

Perhaps more analogous to the case under review here is *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616–17 (1st Cir. 1975). In this case the plaintiff sued the operator of a chlorine plant in negligence for injuries suffered from gas escaping from the chlorine plant. The operator of the plant filed a third-party complaint against the designer of and contractor constructing the plant seeking "the right of contribution from a joint tort-feasor, proportionate to its negligence in designing and building the plant, for damages that might be awarded against third-party plaintiffs." The third-party defendants (i. e., the designer and builder) "moved for a stay . . . pending arbitration." The district court denied the motion and the third-party defendants appealed. The Court of Appeals reversed, ordering arbitration of the arbitrable issue. *See also to the same effect, Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *Buffler v. Electronic Computer Programming Inst., Inc., supra*, 466 F.2d at 700; *Episcopal Housing Corp. v. Federal Ins. Co., supra*, 269 S.C. at 641, 239 S.E.2d at 652.[14]

■ In other instances, the party objecting to arbitration has asserted that arbitration in federal court should be denied because of the pendency of a similar action in state court. These efforts, too, have been nullified by the courts. Federal courts will not "permit a party to a contract to circumvent an arbitration clause by commencing litigation in a state court." *Sumitomo Corp. v. Parakopi Compania Maritima*, 477 F.Supp. 737, 742 (S.D.N.Y. 1979); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 400 F.Supp. 888, 890 (N.D.Ill.E.D. 1975), aff'd., 541 F.2d 1263 (7 Cir., 1976); *Burger Chef Systems, Inc. v. Baldwin, Incorporated*, 365 F.Supp. 1229, 1233–34 (S.D.N.Y. 1973); *Network Cinema Corporation v. Glassburn*, 357 F.Supp. 169, 172 (S.D.N.Y. 1973); contra, *E. C. Ernst, Inc. v. Potlatch Corp.*, 462 F.Supp. 694, 699–701 (S.D.N.Y. 1978). In commenting on the cases from the Southern District of New York on this point, the Court in *Commonwealth Edison* said (400 F.Supp. at 890):

"Those courts would not allow one party to circumvent an arbitration clause through the utilization of state court litigation and neither will I; to do so defeats the basic purposes of arbitration itself."[15]

Particularly may not the parties burden the arbitration process under the Federal Act "by adopting state law which shifts the determination of disputes from arbitrators to courts. To allow [that] . . . would undermine the provisions of the Federal Act."[16]

■ Measured by the above settled canons for the application of the Federal Arbitration Act, this case plainly qualified for relief under Section 4. Concededly, there was an independent basis for federal jurisdiction (i. e., diversity). Under standards

---

**14.** In the *Episcopal Housing Corp.* case, the Court said:

"Under the Federal Arbitration Act, an agreement between two or more parties to submit their disputes to arbitration is not rendered unenforceable merely because there are additional parties to the disputes who are not bound by an arbitration agreement."

**15.** This suit is almost identical on its facts with this case. In that case, the parties had a dispute over the right of Gulf (and others in interest with it) to terminate its nuclear supply contract with Edison. Edison wanted arbitration under the contract; Gulf denied that the dispute was arbitrable. Gulf filed in November, 1974, a suit in state court seeking a declaratory judgment that the dispute was not arbi-

trable. In January, 1975, Edison filed its federal action seeking arbitration. Gulf asked the federal court to "refrain from exercising its jurisdiction at least until the entire state court proceeding [which had been earlier filed] is complete." 400 F.Supp. at 889. And it was, in answer to that argument which is the same as that made by the Hospital here, that the Court in that case stated that it "would not allow one party to circumvent an arbitration clause through the utilization of state court litigation." 400 F.Supp. at 890. This was the opinion of the district court that was affirmed by the Court of Appeals in 541 F.2d 1263.

**16.** *Commonwealth Edison Co. v. Gulf Oil Corp., supra*, 541 F.2d at 1269.

established by the very district court in which the action was filed, as well as by all other federal and state courts (with a single exception to be noted later) which have considered the issue, the relevant contract clearly involved interstate commerce. *C. P. Robinson Cons. Co. v. National Corp. for Hous. Part., supra,* 375 F.Supp. at 451; *Warren Bros. Co. v. Community Building, supra,* 386 F.Supp. at 664; *J. S. & H. Construction Co. v. Richmond County Hosp. Auth.,* 473 F.2d 212, 214 n. 6 (5th Cir. 1973). There is no question of the existence of a written contract which included a broad and comprehensive provision for arbitration of any dispute arising out of the performance of the contract. Nor can the Hospital contest the fact that it has refused to arbitrate the dispute with Mercury over a matter clearly within the arbitration clause of the contract. In these circumstances, the right of Mercury to a stay of proceedings and an order of arbitration under Section 4 is beyond dispute. And the district court, in a similar case, has, as we have seen, recognized this right. *C. P. Robinson Cons. Co. v. National Corp. for Hous. Part., supra,* 375 F.Supp. 446.

Actually as we understand its position, the Hospital does not contest the right normally of Mercury to an order to proceed with arbitration "in accordance with" the principle stated in *C. P. Robinson Construction.* Its basic contention is simply that because it has filed a state action for declaratory judgment that Mercury is not entitled to arbitration under the Federal Arbitration Act, the federal court is obligated to stand aside in favor of the state action. This position was adopted by the district court as the basis for its decision. Before reaching the propriety of that ruling, it is important to note the theories on which the Hospital predicates its state claim of non-arbitrability as set forth in its state complaint.

First, the Hospital asserts that the contract in this case does not involve interstate commerce and is thus not within the coverage of the Federal Arbitration Act. It has admittedly North Carolina authority to support this view. *Burke Cty. Pub. Sch. Bd. of Ed. v. Shaver Partner.,* 265 S.E.2d 481, 483 (N.C.App. 1980); *Bryant-Durham Elec. v. Durham County Hospital,* 256 S.E.2d 529, 532, 42 N.C.App. 351 (1979). However, the district courts of North Carolina, as well as other courts, are to the contrary, and federal rules are controlling. *C. P. Robinson Const. Co. v. National Corp. for Hous. Part., supra,* 375 F.Supp. 446; *Warren Bros. Co. v. Community Building, supra,* 386 F.Supp. 656; *E. C. Ernst, Inc. v. Manhattan Const. Co., supra,* 551 F.2d 1040, n 36 (hospital construction); *Pathman Const. Co. v. Knox County Hospital Ass'n., supra,* 326 N.E.2d at 852–53.[17] Beyond this jurisdictional claim, the Hospital's basic argument is that its own Architect had been negligent in handling this dispute, giving rise to a cause of action in its favor against the Architect for any liability herein and that this controversy between the Hospital and the Architect is, like the controversy in *Sibley v. Tandy Corp.,* 547 F.2d 286, 287 (5th Cir. 1977), "inextricably intertwined and incapable of severance" from the controversy between the Hospital and Mercury. However, as we have seen, the federal authorities are clear that this is not a ground for denial of arbitration of a dispute embraced within the arbitration clause of the contract. The addition of the Architect as a party defendant might prevent removal of the state action as the district court ruled (though, on this, we express no opinion) but it certainly could not frustrate Mercury's plain, indisputable right to an arbitration of *its* dispute with the Hospital. *See Sibley v. Tandy Corp., supra,* 547 F.2d at 287, and other cases cited *supra* on this point. Moreover, any claim of untimeliness, waiver or laches (as distinguished from inconsistent legal action of which there is no claim in this case and which, under the rule stated in *N&D Fashions,* is for the court) is for the arbitrator and may not be an excuse for non-arbitrability. *See Halcon Interna-*

---

17. Incidentally, this case cites and relies on the decision of the district court in *C. P. Robinson,* *supra,* for its holding on the issue of interstate commerce.

*tional, supra,* and *N&D Fashions, supra.* Actually, the Hospital's claim of waiver, as we have already pointed out, rests on what it asserts was the delinquencies or negligence of the Architect, whom it selected and designated in the contract as its agent to handle all disputes under the contract. To say the least, this is a novel theory for avoiding arbitration. However, the crucial point is that, in its state action, the Hospital does not set forth one fact that would, under controlling federal substantive law governing arbitration, defeat the right of Mercury to what the Federal Arbitration Act was intended to assure it, *i. e.,* an "arbitration procedure . . . [that would] be speedy and not subject to delay and obstruction . . . ." *Prima, supra,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06.

 As we have said, the Hospital's objection to the exercise of jurisdiction in this case to afford Mercury its clear right to arbitrate was that there is a state court proceeding involving the same issues and that, in the interest of judicial economy and convenience, the federal court should stay its hand and defer to the state court, since the state court is as able as the federal court "to determine whether federal law with regard to arbitration applies in the instant situation."[18] For this position the Hospital places its principal reliance on *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). We think the reliance misplaced.

In *Will v. Calvert,* the plurality opinion was written by Justice Rehnquist, who emphasized that the Court was dealing with the appeal as one in mandamus and not on direct appeal and that the right to relief in mandamus required a clearer showing than a showing on direct appeal. Under established rules, Justice Rehnquist declared that mandamus could issue only if the party seeking it had a "clear and indisputable right" to have its claims adjudicated in a federal forum, and the right to such relief

was one within the court's discretion. He extended the holding in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), which would deny deference to a concurrent state proceeding if the issue was one "of substantive federal law," to cover deference in favor of concurrent state proceedings which involved federal law and he dismissed *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) with its dictum that reminded federal courts of their "unflagging obligation" to exercise their jurisdiction because there had been no final decision in that case. He concluded by finding that since the issuance of a writ of mandamus is discretionary "it cannot be said that a litigant's right to a particular result [in the exercise of that discretion] is 'clear and indisputable.' "[19]

The critical opinion in this case, however, was that of Justice Blackmun. He was the "swing-man" between Justice Rehnquist's opinion and that of Justice Brennan. Justice Blackmun voted with Justice Rehnquist only to the extent of vacating the writ of mandamus but, unlike Justice Rehnquist, he did so solely in order to permit Judge Will to reconsider his order in the light of *Colorado River.* He questioned the plurality opinion's treatment of *Brillhart* and of *Colorado River,* as authorizing the broad discretion of the district court to defer found by the plurality, for whom Justice Rehnquist spoke. In essence, he agreed largely with the result reached by Justice Brennan in his dissenting opinion except that he would have left the decision to Judge Will to determine whether there were such "exceptional circumstances" as would, under *Colorado River,* permit the district court to depart from its "unflagging obligation" to exercise its jurisdiction. Accordingly, the real decision in *Will* was that a federal court being seized of jurisdiction of a case, was not to stay its proceedings in deference

---

**18.** This language appears in the Hospital's response to Mercury's motion for an order staying state court proceedings filed January 26, 1981. What is interstate commerce is, however, a federal question where federal law must prevail. *See Janmort Leasing, supra,* 475 F.Supp. at 1286.

**19.** 437 U.S. at 666, 98 S.Ct. at 2559.

to a state action involving the same issues unless there were "exceptional circumstances" justifying such stay, and *Will* was remanded in order that the district court could consider whether there were such "exceptional circumstances." And that is exactly the construction given the decision on remand to the Court of Appeals and to Judge Will.

Thus, in *Calvert Fire Ins. Co. v. Will*, 586 F.2d 12 (7th Cir. 1978), the Court of Appeals, on remand, summarized its construction of the several opinions of the Supreme Court in *Will* thus (586 F.2d 14):

> "Justice Blackmun's view is that, in the context of a petition for a writ of mandamus, we should have merely required the district court to reconsider its action in light of *Colorado River* rather than ourselves determining whether *Colorado River* compelled the district court to immediately adjudicate Calvert's federal claims.
>
> "Since the four Justices who joined Justice Brennan's opinion believed that under *Colorado River* the district court now has a clear obligation to immediately adjudicate Calvert's federal claims, it follows logically that these four Justices would favor going at least as far as Justice Blackmun and require the district court to determine whether its earlier deferral to concurrent state proceedings is now correct. Calvert is therefore arguably entitled to an order requiring the district court to reconsider its actions in this case in light of *Colorado River.*
>
> "The district court, however, in its statement filed with this court on remand, has indicated that it intends to follow such a course on its own motion. There is therefore no need for this court to take any further action."

In *Calvert Fire Insurance Co. v. American Mut. Reins. Co.*, 459 F.Supp. 859 (N.D. Ill., E.D. 1978), which was the decision of Judge Will on remand, Judge Will construed the decisions in *Will* exactly as had the Court of Appeals in 586 F.2d at 14, and he proceeded to apply the rule that limited deference to a concurrent state action to

situations presenting very "exceptional circumstances." He found that there were "exceptional circumstances" in the case under review justifying the stay. In reaching that conclusion he said that the state action, involving a matter *controlled by state law*, was filed six months before the federal action and he found that, later when filed the federal action was no more than a "reactive defensive maneuver," simply "a tactical maneuver to delay the determination of whether or not Calvert owes the pool its share of the 1974 losses," and a mere "tactical defensive action in which the only exclusive federal claim is a contrived one." [20] It was on that basis and on that basis alone that Judge Will determined to stay the federal action.

It is manifest that Mercury's action was not a "contrived" federal claim asserted only in order to delay the resolution of the controversy nor was it a "reactive" or "tactical maneuver" for such purpose. The charge of a "contrived" action is more appropriately applied to the Hospital's state action. After negotiating for months both through its Architect and later its attorneys with respect to the claim and, though giving the clear impression that it earnestly desired to settle amicably the controversy without arbitration, the Hospital suddenly, without any forewarning, advised Mercury on October 8 that it was filing immediately a suit in the state court in order to enjoin arbitration. It is only fair to assume that this was to take advantage of the decisions of the North Carolina Court of Appeals which would deny interstate commerce character to the contract in question. It joined as a codefendant its own agent, the Architect, and again it seems fair to assume that this was to avoid removal of the action to the federal court. But, even assuming there is some controversy between the Hospital and the Architect, to which Mercury is not a party, why should Mercury be delayed in its right to a prompt resolution by arbitration, without the expense of long and protracted litigation, as the parties had sol-

**20.** 459 F.Supp. 862–63.

emnly agreed, because of some controversy between the Hospital and its Architect? Such a maneuver plainly prejudiced Mercury in its right to arbitration under the Federal Act. This is the very kind of prejudice noted in *E. C. Ernst, Inc. v. Manhattan Const. Co., supra,* 559 F.2d at 269, where the objection to arbitration was the reverse of that here but where the principle was the same:

"When one party reveals a disinclination to resort to arbitration or any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial, which in this case is quite lengthy. Arbitration is designed to avoid this very expense."

There are no "exceptional circumstances" justifying the action of the district court in deferring in favor of the state court and certainly the district court stated none. Nor could it do so, on the basis of the conceded record here.[21] The only apparent reason for the Hospital's precipitate resort to its state action was an attempt to foreclose any resort by Mercury to arbitration in the federal court under federal law, and to litigate the right to arbitrate under state law, all on the premise that the contract in question did not involve "interstate commerce." This view of the nature of the contract has been declared by the Court of Appeals of North Carolina in two recent cases.[22] In these cases the Court of Appeals of North Carolina held that under facts similar to those here the pertinent construction contract was not "in interstate commerce." If this construction of the contract of the parties in this case were adopted, the rights of the parties would not be governed by the Federal Arbitration Act, but by state law, which is the Hospital's basic position. Such a construction of the contract is, as we have seen, contrary to all relevant federal decisions, including decisions of the very court which stayed the federal proceedings in this case.

The Hospital seeks to answer this argument by arguing that, if the contract is held to be in interstate commerce, the North Carolina arbitration statute would apply and it is similar to the Federal Act. Thus, whether in the state court or in the federal court, the proceedings, according to the Hospital, would be the same. North Carolina it is true has adopted the Uniform Arbitration Act, Article 45A, § 1–567.1, *et seq.* G.S.N.C., which has considerable similarity to the Federal Act. However, that Act and its provisions have not been given judicial construction by the North Carolina courts as has the Federal Act by the federal courts and the rights of the parties thereunder have not thus been clearly delineated. Until a statute has been given an authoritative judicial construction by the enacting state's own courts, its application and reach are uncertain. Specifically, we do know what the rights of the parties are on any claim of untimeliness, laches or waiver under the Federal Act. We do not know whether the North Carolina courts will treat these issues as issues for the arbitrators, or as issues to be the subject of long jury trials. The Hospital assumes apparently that the North Carolina courts would treat them as issues for jury determination in a judicial proceeding and not for the arbitrators for it attaches to its state complaint a demand for a jury trial, a right it would not have in federal court, where all these issues would be committed to the determination of the arbitrators. Moreover, if these issues are triable to the court rather than by the arbitrators, Mercury will be denied the right to a "speedy [remedy] not subject to delay and obstruction" by the delays inherent in a jury trial. This was the right the Federal Act was particularly intended to assure. In addition, federal procedure under the Act, as established in the decisions, would not permit the Hospital, by the addition of the Architect as a codefendant, to

---

21. This it would seem is a complete answer to the faulty assessment of *Will* as made by the court in *E. C. Ernst, Inc. v. Potlatch Corp., supra,* 462 F.Supp. 694, on which the district court rested its decision.

22. *Burke Cty. Pub. Sch. Bd. of Ed. v. Shaver Partner., supra,* 265 S.E.2d at 483; *Bryant-Durham Electric Co. v. Durham County Hospital Corp., supra,* 256 S.E.2d at 532.

frustrate and defeat arbitration; the federal court would simply sever the arbitrable claim and order the parties to proceed to arbitration of that claim. All these rights are rights guaranteed Mercury by the Federal Arbitration Act, which governs if the contract which provides the basis for the claim is "in commerce."

This is a case where it can be fairly said to be doubtful whether the rights of Mercury as fixed by "federal substantive law" will be recognized in the state court. Certainly, if the North Carolina court adheres to its view that contracts such as the one here are not "in commerce," or construes the terms of the Uniform Arbitration Act with the severe rigidity it has in arbitration cases prior to the State's adoption of the Uniform Arbitration Act, Mercury will not be accorded the benefit of the "substantive federal law" developed in the federal court for the application of the Federal Arbitration Act. The loss of its rights as established by federal "substantive law" in arbitration demands that the district court not defer here. Even the plurality opinion in *Will* would not suggest deference where it was not clear that the state courts would apply controlling federal law as mandated under the Supremacy Clause. We do not think the mere fact that North Carolina has recently enacted the Uniform Arbitration Act constitutes such an "exceptional circumstance" as would preclude Mercury's right to a federal forum for the exercise of a federal right.

It should be added that refusal by the district court to defer to the state action could not prejudice either party. There has been no action taken in the state action. It is in exactly the same posture as the federal action. The real point of difference is that the federal courts have a body of precedent governing the actions; the North Carolina courts have none. Both actions are controlled by federal, not state, law. If expedition of the resolution is the desideratum, then plainly every consideration favors federal jurisdiction over state jurisdiction, particularly since federal law is controlling.

Unlike Judge Will in *Calvert,* the district court found no "exceptional circumstances" justifying a departure from the *Colorado River* rule of "unflagging obligation" of the federal court to maintain federal jurisdiction, despite the pendency in state court of a similar action between the parties. Without such finding of "exceptional circumstances," the district court had no right to stay the federal proceedings in this case. This is the teaching of *Will v. Calvert* as construed by Judge Will and by the Seventh Circuit. That right is not to be defeated by "forum-shopping," which operates, whether intentional or not, to defeat Mercury's plain federal right to arbitration and to deny it a right to a federal forum for the redress of a federal right by a far-fetched claim in a cause of action in the state court by the Hospital against its own agent for alleged delinquencies for which Mercury had no responsibility.

Accordingly, the judgment of the district court is reversed and the cause is remanded to the district court with directions to proceed in conformity herewith.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent for the reasons sufficiently stated by Judge Hall, and I would add a word in joining his opinion.

As Judge Hall has pointed out for State court decisions, the only federal courts of appeal to consider the question have uniformly decided that cases under the Federal Arbitration Act must be decided by State courts when called upon. *Commercial Metals Co. v. Balfour, Guthrie & Co., Ltd.,* 577 F.2d 264 (5th Cir. 1978); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37.

As the opinion of the majority does not emphasize, this is not, and may not be, a case of federal question jurisdiction. We have so held only recently in *Sine, et al v. Local No. 992, etc.,* 644 F.2d 997 (4 Cir., 1981), and the statute specifically so provides, 9 U.S.C. § 4. Thus, the case before us must be based on diversity jurisdiction, as it is.

In each diversity case where one party prefers a federal forum and the other a State forum, there is apt to be a race to the courthouse. There is nothing iniquitous about it, and to hold as the majority does that preferring a State forum somehow offends does not give effect, I think, either to Article VI of the Constitution or of the latest statement of the Supreme Court on that subject. Article VI, in pertinent part, provides:

> "The Senators and Representatives before mentioned, and the Members of the State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; ...."

As it has said before, in *Sumner v. Mata*, 449 U.S. 539, 549, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981), the Court stated:

> "State judges as well as federal judges swear allegiance to the Constitution of the United States, and there is no reason to think that because of their frequent differences of opinion as to how that document should be interpreted that all are not doing their mortal best to discharge their oath of office."

That statement applies, of course, to the construction of federal statutes.

The mere fact that one of the parties here does not desire arbitration, while the other does, does not mean that the party who desires arbitration is necessarily right and the party who opposes it is necessarily wrong. It is simply that, as in every law suit, there is a difference of opinion.

Indeed, if there is any forum shopping in this case and if such is somehow or another iniquitous, which I doubt, it is equally on the part of the federal plaintiff. The federal plaintiff (Mercury) was a State court defendant. Even assuming that the North Carolina Supreme Court would find that the contract involved here was not in interstate commerce, and thus the Federal Arbitration Act would not apply because of the two intermediate court decisions,[1] there is no reason given nor is any speculation possible that the North Carolina courts would not have enforced the North Carolina Arbitration Act had the federal plaintiff (Mercury) only requested it in that proceeding.[2] Thus, the federal plaintiff would have already achieved the arbitration it now so zealously asks us to impose on the other party. Because it did not take the simple and direct route of previously getting the arbitration that it now says it wants, the only logical conclusion is that it wished a federal forum to decide the question of whether or not to arbitrate as well as to review the decision of the arbitrators.

In line with these thoughts, I note that the owner, the contractor, and the architect, each of whom blames the others for the difficulties at hand, were all parties in the State court proceeding and thus complete relief could have been given. All are not parties to the federal proceeding and thus complete relief may not be given.

When I add these reasons to those given by Judge Hall, I am more firmly of opinion that the district court did not abuse its discretion in awaiting action on the part of the State court, which is all that it did. The action of the district court is nothing more nor less than the exercising of control of its own docket, in which matter it should be allowed rather wide latitude instead of

1. Since *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), intermediate State court decisions are not binding, but should receive proper regard. Wright on *Federal Courts*, 2nd Ed., § 58.

2. The North Carolina statute § 1–567.3(a) provides that "On application of *a party* showing an agreement... [to arbitrate] the court *shall* order the parties to proceed with arbitration...." And subsection (c) of the same code section provides that, for pending litigation, the application "*shall be made*" in the pending case. (Italics added)

To emphasize that there is no difference here except as to forum, even the arbitrator, State and federal, would be chosen from the panel, for the contract provides for appointment by the American Arbitration Association. 9 U.S.C. § 5; N.C.G.S. § 1–567.4; Construction Industry Arbitration Rules, American Arbitration Association, 1981, §§ 5–13 incl.

being strictly circumscribed as the majority would have it.

I am authorized to say that Judge HALL joins in this opinion.

K. K. HALL, Circuit Judge, dissenting:

I am at a loss to understand how the majority could have strayed so far afield in its resolution of this case. We have been called upon to determine whether the district court properly exercised its discretion by deferring to the state court. Rather than addressing this question, the majority concentrates on tangential matters which are not ripe for adjudication and which serve only to divert attention from the true controversy.[1]

This controversy is a product of the parallel legal proceedings instituted by the parties. Initially, the Hospital filed a declaratory judgment action in state court seeking a declaration of its rights and liabilities under the construction contract. The Hospital alleged, among other things, that Mercury was not entitled to invoke the arbitration clause of the contract because it had waived arbitration, and was otherwise prohibited by laches and estoppel. In response, Mercury asserted its right to arbitration.

Although North Carolina provides by statute a means for compelling arbitration,[2] Mercury nevertheless filed in federal court a petition to compel arbitration pursuant to the Federal Arbitration Act and a petition to remove the state action to federal court. The district court judge denied removal and declined to rule on the petition to compel because the identical issues were already before the state court. Mercury now asks us to decide whether the district court properly stayed its consideration of the petition to compel arbitration pending the outcome of the parallel state proceeding.

When analyzing this question, we must remember the nature of the case and its procedural posture. The identical issues of arbitration and waiver have been presented to both a state and federal court. The parties to the arbitration agreement are before both courts, and each court has statutory authority to compel arbitration.[3]

---

1. The majority opinion, which in effect directs arbitration, will come as a surprise to all parties. No one argued that this court should decide that issue. The bone of contention concerned which trial court should decide, in accordance with the plain provisions of the statutes, whether arbitration should be compelled.

2. N.C. Gen. Stat. § 1–567.1 et seq.

3. The clear majority of decisions has held that a state court is obliged to apply the Federal Arbitration Act to arbitration disputes involving interstate commerce. *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 67 Cal. App.3d 19, 136 Cal.Rptr. 378 (1977); *West Point-Pepperell, Inc. v. Multi-Line Industries, Inc.*, 231 Ga. 329, 201 S.E.2d 452 (1973); *Pathman Const. Co. v. Knox County Hospital Ass'n*, 164 Ind.App. 121, 326 N.E.2d 844 (1975); *Fite & Warmath Const. Co. v. MYS Corp.*, 559 S.W.2d 729 (Ky.1977); *In re A/S J. Ludwig Mowinckels Rederi*, 25 N.Y.2d 576, 307 N.Y. S.2d 660, 255 N.E.2d 774, *cert. den.* 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272 (1970); *Episcopal Housing Corp. v. Federal Insurance Co.*, 269 S.C. 631, 239 S.E.2d 647 (1977); *Miller v. Puritan Fashions Corp.*, 516 S.W.2d 234 (Tex. Civ.App.1974); *Port of Seattle v. Washington Utilities & Transportation Comm.*, 92 Wash.2d 325, 597 P.2d 383 (1979) (en banc). Cases reaching a contrary conclusion include *Pull-*

man, *Inc. v. Phoenix Steel Corp.*, 304 A.2d 334 (Del.Super.1973); *Standard Co. of New Orleans v. Elliott Const. Co.*, 363 So.2d 671 (La.1978); and *Wilson & Co. v. Fremont Cake & Meal Co.*, 153 Neb. 160, 43 N.W.2d 657 (1950), *cert. den.* 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951).

The position of North Carolina is unclear. In the two decisions cited by the majority, the North Carolina Court of Appeals ruled that the Federal Arbitration Act did not apply to the contracts in question because those contracts did not involve interstate commerce. *Burke County Public Schools Bd. of Ed. v. The Shaver Partnership*, 46 N.C.App. 573, 265 S.E.2d 481 (N.C.App.1980); *Bryant-Durham Electric Co. v. Durham County Hospital Corp.*, 42 N.C.App. 351, 256 S.E.2d 529 (1979).

However, we need not address the issue here. North Carolina has adopted the Uniform Arbitration Act, N.C.Gen.Stat. § 1–567.1 et seq. The Uniform Act requires the state court to compel arbitration in virtually the identical manner and circumstances set forth in the Federal Act. *See* note 3, *infra*. Therefore, the same result should be obtained regardless of the law applied.

The North Carolina act provides, in pertinent part:

§ 1–567.2. *Arbitration agreements made valid, irrevocable and enforceable; scope.*—
(a) Two or more parties may agree in writing

Therefore, both courts are capable of providing the appropriate relief to the parties. Further, both lawsuits are still in the pleading stage, so neither party has had an opportunity to present its arguments for or against arbitration. Thus, the next step in these proceedings is for a trial court to hear the parties and determine whether the issues are arbitrable. Against this background, we must decide whether the district court is obligated to make that determination.

The Federal Arbitration Act does not specify the obligations of the district judge when confronted with a parallel state proceeding. Of the various provisions of the Act, Section 4 comes the closest to governing this situation.[4] That section requires the court to consider a petition to compel and then to either order arbitration or, if necessary, to entertain certain specified challenges to the agreement. The clear Congressional purpose behind these directives is to expedite the arbitration process by requiring prompt action by the court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).

In this case, however, the purpose of Section 4 will be competently and authoritatively implemented by the state court. It would serve no purpose to read into Section

---

to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

. . . .

§ 1–567.3. *Proceedings to compel or stay arbitration.*—(a) On application of a party showing an agreement described in G.S. 1–567.2, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

. . . .

(c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a) of this section, the application shall be made therein. Otherwise the application may be made in any court of competent jurisdiction.

. . . .

4. 9 U.S.C. § 4 provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specifically call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

4 the requirement that the federal court must also rule upon the petition, thereby duplicating the efforts of the state court and possibly contradicting its result. Under such circumstances, Section 4 does not require the federal court to rule upon the petition.

We next turn to the Supreme Court's landmark decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in which the Court developed several principles and standards for gauging the propriety of a federal court's deferral to a state court. The Court stated that, as a general rule, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Id.* at 817, 96 S.Ct. at 1246, *quoting McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). The Court further observed that the federal district courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. 424 U.S. at 817, 96 S.Ct. at 1246. However, the Court also recognized the importance of wise judicial administration, conservation of judicial resources and the comprehensive disposition of litigation, and found that exceptional circumstances would justify deferral by the federal court. Those circumstances include: (1) the prior assumption of jurisdiction over the *res* by state court; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Id.* at 818, 96 S.Ct. at 1246.

Such exceptional circumstances are present here.[5] As discussed earlier, the waiver issue was first presented to the state court, which has the authority and competence to provide appropriate relief. A stay of the federal action gives proper deference to the prior jurisdiction of the state court and eliminates the possibility of duplicative effort and conflicting results. Further, the state court, having jurisdiction over both the arbitration issue and the substantive action on the merits, is in a better position to bring the entire litigation to a prompt conclusion.

Despite these strong considerations, the majority concludes that the federal court must rule upon Mercury's petition because "federal substantive law" gives Mercury the right to arbitrate the Hospital's waiver defenses. The majority overlooks the fact that we do not know the basis for these defenses because this case is still in the pleading stage, and therefore we cannot know whether the defenses are of an arbitrable nature. Nevertheless, the majority jumps to the conclusion that arbitration would immediately ensue, and in the process forgets that we are supposed to be deciding which court will make that very determination. In other words, with a near total ignorance of the surrounding circumstances, the majority has ruled upon Mercury's petition to compel arbitration and has used that ruling to admonish the district court for not acting in the first place.

I suspect the majority's primary fear is that the Hospital has attempted to deprive Mercury of its access to a federal forum. The majority refers ominously to the filing of the state action as intended "to defeat arbitration," and labels the joinder of the architect-agent as a ploy to avoid diversity. These inferences ultimately compel the majority to accuse the Hospital of filing "a contrived action" and forum-shopping.

The more reasonable explanation for these acts is that after months of negotiations, and having discovered the possible misfeasance of its architect, the Hospital decided it had better litigate its cause. The Hospital did so in state court so that it

---

5. The factors regarding the state court's previous assumption of jurisdiction over the *res* and the inconvenience of the federal forum are not present. Though these factors are important in their own right, we do not view their absence as dispositive. As the Supreme Court stated in *Colorado River:*

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

could bring all the parties before one forum. The treacherous motives attributed to these acts is more likely a conjecture stemming from the majority's hindsight than the reasoned product of the Hospital's foresight.

In the final analysis, the majority has combined a form of bootstrap logic with misconceptions of bad faith to reach a conclusion which is supported neither by law nor fact. For these reasons, I dissent.